G9SHCONC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                           16 CR 370 (CM)

5
     MATTHEW CONNOLLY and GAVIN
6    CAMPBELL BLACK,

7                                           Arraignment
              Defendants.
8
     ------------------------------x
9
                                           New York, N.Y.
10                                          September 28, 2016
                                           10:00 a.m.
11

12   Before:

13                   HON. COLLEEN MCMAHON,

14                                          District Judge

15                        APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     RICHARD POWERS
18   CAROL SIPPERLY
     MICHAEL KOENIG
19        Assistant United States Attorneys

20   KENNETH BREEN
     PHARA GUBERMAN
21        Attorneys for Defendant Connolly

22   SETH LEVINE
     JILLIAN BERMAN
23   AARON KARP
          Attorneys for Defendant Black

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

G9SHCONC

```
 1                 (Case called)
 2                 MR. POWERS:  Good morning, your Honor.  Richard
 3      Powers.  I'm joined by my colleagues, Carol Sipperly, and
 4      Michael Koenig, for the government.
 5                 THE COURT:  Good morning.
 6                 MR. BREEN:  Ken Breen and Phara Guberman on behalf of
 7      Matt Connolly.
 8                 MR. LEVINE:  Good morning, your Honor.  Seth Levine,
 9      Jillian Berman, and Aaron Karp on behalf of Mr. Black.  As per
10      our discussion at the last appearance, Mr. Black is not
11      appearing today and has fully authorized us to speak on his
12      behalf.
13                 THE COURT:  Thank you.  Have a seat.
14                 What do we need to do today?
15                 THE DEPUTY CLERK:  Judge, there's a superseding
16      indictment which Mr. Connolly has not been arraigned on.
17                 THE COURT:  Would you please arraign him.
18                 THE DEPUTY CLERK:  Mr. Connolly, if you would rise.
19                 The United States Attorney for the Southern District
20      of New York has filed a superseding indictment, S1 16 CR 370,
21      that charges you and your codefendant in Count One with wire
22      fraud and bank fraud conspiracy.  It charges you in Counts Two,
23      Three, Five, Seven, Eight, Nine, and Ten with substantive
24      counts of wire fraud.  Have you received a copy of the
25      indictment, sir?
```

G9SHCONC

| | |
|---|---|
| 1 | MR. BREEN:  He has. |
| 2 | THE DEPUTY CLERK:  Discussed it with your attorney? |
| 3 | MR. BREEN:  Yes. |
| 4 | THE DEPUTY CLERK:  Counsel, do you waive formal |
| 5 | reading? |
| 6 | MR. BREEN:  We do. |
| 7 | THE DEPUTY CLERK:  How do you plead at this time to |
| 8 | those counts? |
| 9 | MR. BREEN:  Not guilty. |
| 10 | THE DEPUTY CLERK:  Thank you. |
| 11 | THE COURT:  Thank you. |
| 12 | What's up now?  How can we move this case along? |
| 13 | MR. POWERS:  Your Honor, first thing, government's |
| 14 | entered into a stipulated protective order with defendant |
| 15 | Black, and there's just one change with the one we entered into |
| 16 | with Mr. Connolly.  So what the government proposes and that |
| 17 | the parties agree is that we make one protective order with |
| 18 | both parties in it so everybody's on the same footing. |
| 19 | THE COURT:  I'd really like that. |
| 20 | MR. POWERS:  Yes, your Honor.  And then we'll file |
| 21 | that on the record. |
| 22 | THE COURT:  Terrific.  Great.  All right.  That means |
| 23 | we can start discovery.  Let's talk about a schedule for this |
| 24 | case.  I'd like to move this case toward a trial sometime in my |
| 25 | lifetime.  So what are we talking about? |

1           MR. POWERS:  Your Honor, with respect to with to the

2     discovery at this point, both parties, both defendants, have

3     the initial bulk of the discovery that the government plans to

4     make available.  So that is with them.  Discovery, I can kind

5     of give you highlights, your Honor, if you'd like, but includes

6     a significant volume of material gathered from Deutsche Bank:

7     chats, e-mails, and the like, 302s.

8           (Pause)

9           MR. POWERS:  So they have the material from Deutsche

10    Bank: chats, e-mails, phone calls, interview reports.  The

11    government has separately produced what it considers to be the

12    notable hot documents.  And, of course, as the case progresses,

13    there would be additional 302s, and whatnot, that the

14    government will produce when those become available.  So that

15    material, what we consider to be the bulk of the discovery in

16    this case, is with the defendants at this point.

17          THE COURT:  How long do counsel want to have for

18    review of that?  And then let's set a motion schedule, and I'd

19    really like to look at a trial date.

20          MR. LEVINE:  May I be heard, your Honor?

21          THE COURT:  What?

22          MR. LEVINE:  May I be heard?

23          THE COURT:  Sure.

24          MR. LEVINE:  Your Honor, what we would propose is that

25    we have another conference.  We would propose in January.  And

G9SHCONC

1   let me explain why.  For Mr. Black, we received the hard drive

2   containing discovery on Monday, the password.  It's a massive

3   thing.  We have not been able to look at any of the discovery,

4   and it is something in the neighborhood of at least 16 million

5   pages of material, I believe.

6          This case has two characteristics that I think are a

7   little bit unique with respect to discovery, and if I might

8   just explain to the Court why I think so.  First, the conduct

9   in this case, primary conduct, occurred almost a decade ago.

10          THE COURT:  Correct.  Long time ago.

11          MR. LEVINE:  Second, for my client especially, all of

12   his conduct occurred outside the United States.  He is, as you

13   know, a citizen of the United Kingdom, and he has almost no

14   activity in the United States whatsoever; had nothing to do

15   with this case.  So for us, in addressing what is a case that

16   has been going on for years, the government has obviously taken

17   action in other areas here, it is remarkably complex.  We

18   expect there's going to be a lot of international discovery.

19   So rather than --

20          THE COURT:  What do you mean "a lot of international

21   discovery"?  The government's going to produce -- you're not

22   going to take discovery.  This isn't a civil case.  The

23   government's going to produce discovery to you.  You may go out

24   and do some investigating internationally.

25          MR. LEVINE:  Well, your Honor, I'd ask the Court to

G9SHCONC

1    withhold judgment on that issue.  We think that there have been

2    numerous cases throughout the United Kingdom and other places.

3    We think there's tremendous amounts of *Brady* material and other

4    exculpatory evidence.

5              THE COURT:  If there's *Brady* material in the

6    possession of the government -- I've already thrown out a

7    conviction.  I hope the United States Attorney's Office never

8    forgets that I hold their feet to the fire on *Brady*.

9              MR. LEVINE:  I'm deeply appreciative of that, your

10   Honor, and we're aware of that.

11             THE COURT:  But they have to produce it.  You don't

12   have to find it; they have to produce it.  It has to be in

13   their possession, custody, and control.  They don't have to go

14   out and locate it.  That's the rule.

15             MR. LEVINE:  I understand, your Honor.  And to the

16   extent that the government is going to be producing materials

17   from its international partners that may substantially reduce

18   the issue, but on our first appearance talking about this case,

19   I wanted to be transparent with the Court that we do think that

20   preparation here is extremely -- will be longer than in most

21   even sophisticated white collar cases because of the nature and

22   the scope of it.

23             So what we would propose is to give us a few months to

24   look through exactly what the government has given us, and we

25   understand it's a very sizable production, and then be able to

G9SHCONC

1    come back to the Court with a plan and with a thoughtful

2    suggestion on scheduling so that we do not have sort of, well,

3    one more thing, Judge, we didn't realize this.  We'd like to do

4    this in a thoughtful way.

5              We do think, respectfully, that to properly prepare a

6    defense in this case -- and we believe this case is one that

7    the government should not have brought and has been unfairly

8    brought -- we think we are going to need substantial time

9    because it is incredibly complex, especially with respect to

10   the basic allegations of the supposed manipulation of this

11   standard internally within one bank.  We think that there is

12   going to be a substantial effort needed to demonstrate why this

13   case is unfounded.  We recognize the Court has a schedule.  We

14   respect that.  We want to move this along quickly.  Our client

15   certainly would like to have his day, but we do think

16   respectfully, given the challenge here, that it is going to be

17   a little bit of a longer schedule.  And we'd ask the Court's

18   indulgence until January to explain that more fully.

19             MR. BREEN:  Your Honor, we agree with that.  An

20   enormous task here, 16 million pages of discovery.

21             THE COURT:  Sixteen million is now turning into

22   16 billion.

23             MR. BREEN:  Well, it might with some of the material.

24             THE COURT:  He said 16 million.  You said 16 billion.

25             MR. BREEN:  No, I said million.

8

G9SHCONC

1          THE COURT:  I don't know.  It's going to be

2     16 trillion eventually.

3          MR. BREEN:  I hope not.

4          THE COURT:  I'm happy to set a date in January as long

5     as I set a trial date, and I'm setting a trial date, and it's

6     going to be next September.  That's a lot of time.

7          MR. BREEN:  Your Honor, I have a trial scheduled in

8     Wilmington, Delaware, in October/November next year.

9          THE COURT:  That's too bad.  Then your client will

10    have to do something about that.  I said September.

11          I need a list of the Jewish holidays next year.

12          MR. LEVINE:  Your Honor, may I be heard just briefly

13    on the scheduling?

14          THE COURT:  Yes.

15          MR. LEVINE:  I understand the Court has ruled.  I

16    respectfully ask that at least we be allowed to revisit this

17    issue when we next meet.

18          THE COURT:  Here's the problem.  He's already got a

19    trial scheduled.  You'll have trials.  I'm getting this on the

20    calendar now, all right.  I'm getting it on the calendar now so

21    that I don't hear in January that you all don't have any time

22    until 2020.

23          MR. LEVINE:  Well, your Honor, may I suggest another

24    possible date for this trial that I think we can live with and

25    which we would live with?

G9SHCONC

```
 1          THE COURT:  And what would that be?

 2          MR. LEVINE:  It would be March of '18.

 3          THE COURT:  Absolutely not, under no circumstances.

 4          MR. LEVINE:  Yes, your Honor.

 5          MR. BREEN:  Your Honor, January, then?

 6          THE COURT:  Pardon me?

 7          MR. BREEN:  January, then?  It won't directly conflict

 8  with my other trial.

 9          (Pause)

10          THE DEPUTY CLERK:  You wanted January?

11          THE COURT:  Excuse me.  January 2018.  Excuse me.  I

12  have to look at the calendar.

13          January 8, 2018, that's a firm trial date.

14          MR. LEVINE:  Thank you very much, your Honor.

15          THE COURT:  Let's set a date in January for our next

16  conference.

17          MR. LEVINE:  If the 18th or 19th will be available, I

18  know we checked that with the defense, if that's acceptable to

19  the Court.

20          THE DEPUTY CLERK:  The 18th would be good at 2:00

21  o'clock.

22          MR. LEVINE:  Thank you.

23          THE COURT:  Time excluded with the consent of counsel?

24          MR. BREEN:  Yes, your Honor.

25          MR. LEVINE:  Yes, your Honor.
```

G9SHCONC

```
 1              THE COURT:  In the interest of justice, the
 2    defendants' interest in a speedy trial being outweighed by the
 3    need to conduct discovery, defense counsel asked for a long
 4    trial date; therefore, as far as I'm concerned, time is
 5    excluded until January 8, 2018.  Any problem with that?
 6              MR. BREEN:  No, your Honor.
 7              MR. LEVINE:  No.  Thank you very much, your Honor.
 8              THE COURT:  Anything else from the government?
 9              MR. POWERS:  Nothing else from the government, your
10    Honor.
11              THE COURT:  Thank you.
12              Anything else from defendants?
13              MR. BREEN:  No, your Honor.
14              MR. LEVINE:  No.  Thank you very much, your Honor.
15              MR. BREEN:  Thank you.
16              THE COURT:  Terrific.  I'll see you in January.
17              (Adjourned)
18
19
20
21
22
23
24
25
```