```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              16 Cr. 370 (CM)


MATTHEW CONNOLLY and
GAVIN CAMPBELL BLACK,

                                            Conference
              Defendants.

------------------------------x
                                            New York, N.Y.
                                            January 18, 2017
                                            2:00 p.m.
Before:

                  HON. COLLEEN MCMAHON,

                                            District Judge

                        APPEARANCES

LORETTA E. LYNCH
     United States Attorney for the
     Southern District of New York
RICHARD A. POWERS
CAROL L. SIPPERLY
MICHAEL T. KOENIG
     Trial Attorneys
     Fraud Section, Criminal Division

PAUL HASTINGS LLP
     Attorneys for Defendant Connolly
KENNETH M. BREEN
PHARA A. GUBERMAN

LEVINE LEE LLP
     Attorneys for Defendant Black
SETH L. LEVINE
JILLIAN B. BERMAN
AARON I. KARP
```

1           (Case called)
2           THE COURT:  Good afternoon.
3           MR. POWERS:  Good afternoon, your Honor.  Richard
4   Powers, Carol Sipperly, and Michael Koenig, for the government.
5           MR. BREEN:  Kenneth Breen and Phara Guberman, for Mike
6   Connolly.  Good afternoon, your Honor.
7           MR. LEVINE:  Good afternoon, your Honor.  Seth Levine,
8   Jillian Berman, and Aaron Karp, for Mr. Black.
9           THE COURT:  OK.  Have a seat.  We have clients who are
10  excused from appearing, I believe.
11          MR. BREEN:  Correct.
12          MR. LEVINE:  Yes, your Honor.  Thank you.
13          THE COURT:  Where are we?
14          MR. POWERS:  Your Honor, since the last time we met,
15  in September, the government believes it's produced the bulk of
16  discovery and the defendants have that and have had some
17  opportunity, we understand, to go through it.  Several weeks
18  ago we started exchanging letters related to the discovery, and
19  the parties have gone back and forth on those letters.  And
20  we're in the process now of more or less figuring out where we
21  can agree.
22          THE COURT:  And where you need my help to agree?
23          MR. POWERS:  Yes, your Honor.  Exactly.  We're hoping
24  to sort of streamline it for your Honor by only bringing issues
25  to you that we just cannot agree.  I think at this point it's

probably worth noting that we anticipate there are two issues now where we think it's safe to say we don't agree. One is with respect to defining the scope of the prosecution team for this case.

        THE COURT:  What?

        MR. POWERS:  Sorry, your Honor.

        THE COURT:  Say that again.

        MR. POWERS:  The scope of the prosecution team for purposes of discovery.

        THE COURT:  Scope of the prosecution team?

        MR. POWERS:  Yes, your Honor.  In other words, the government's position here is that the prosecution team is, from the Department of Justice, the criminal division, the antitrust division, and the Federal Bureau of Investigation.  I don't want to speak for the defendants, but my understanding is they take a broader view in terms of some of the other agencies that participated in their own, our position, parallel fashion investigating the LIBOR matter, including international regulators and whatnot and prosecutorial authorities, and that has bearing on what the government's obligation is.

        THE COURT:  Not only does it have bearing, but I want it briefed in the next three weeks.  I'm not going to wait for you to all talk about it.  I want it briefed.  I want it briefed in the next three weeks so I can decide it by the end of February so that somebody doesn't tell me in a year that I'm

1  going to have to postpone the trial because I make a decision
2  that the government doesn't like.  That's happened to me once,
3  and I will not be bitten in the bud again.
4          MR. POWERS:  Yes, your Honor.  Just to make sure I
5  understand the timing, when you say briefed in the next three
6  weeks --
7          THE COURT:  I mean I want everything briefed.  You
8  know what your positions are.  You can exchange simultaneous
9  briefs in two weeks and responses to those simultaneous briefs
10 one week after that.  Two weeks from today is the 1st of
11 February and three weeks is the 8th of February.
12         What other agencies do you all think are involved?  Go
13 ahead.
14         MR. LEVINE:  May I be heard, your Honor?
15         THE COURT:  Yes.
16         MR. LEVINE:  Your Honor, frankly, we are thrilled to
17 brief this issue so quickly, but I think some of this could be
18 resolved, maybe even right now, because if we just take the
19 government's word for it, what they've told the American
20 public --
21         THE COURT:  Actually, you can't resolve it right now
22 because it hasn't been presented to me.
23         MR. LEVINE:  Yes.
24         THE COURT:  I haven't had time to think about it, so
25 I'm telling you to brief it.

1    MR. LEVINE:  Yes.  I appreciate that.  Let me answer
2    your question, your Honor, by saying that we would say the
3    prosecution team consists of the people that are contained in
4    the Department of Justice's press releases about who they
5    worked with and cooperated with on this case.
6         THE COURT:  Which includes?
7         MR. LEVINE:  The CFTC; the British regulator, FCA; the
8    Securities and Exchange Commission, United Kingdom Serious
9    Fraud Office; BaFin, the German regulator; the European Central
10   Bank, all of these, your Honor.  And I'm happy to hand up to
11   you the government's press release, and there have been
12   numerous releases.
13        THE COURT:  The odds that you're going to win on that
14   broad a definition are somewhere between slim and none, but I'm
15   interested to read your brief.  The CFTC and the SEC are one
16   thing.  U.K. Serious Fraud Office is another.
17        MR. LEVINE:  Your Honor, I take it that given in this
18   case the reason that I am standing in this courtroom when my
19   client has been required to travel across the Atlantic and
20   stand trial here, instead of as many of his countrymen, in
21   England, is because as the Serious Fraud Office told us when we
22   were directed to speak to them that there was an agreement to
23   divide the LIBOR-related cases up and this case and my client
24   to be brought here.
25        THE COURT:  Fine.  I'm just telling you, you can brief

the issue. If there was an agreement to divide, that suggests that the Serious Fraud Office was not part of the prosecution team.

        MR. LEVINE:  They took some of the cases.

        THE COURT:  I get that.

        MR. LEVINE:  The point is, your Honor, we also think that the government, to the extent that they're going to contest what's in their press release, should be required to provide us factual information about the precise relationship between these entities given what they've said. The reason, and you've asked for simultaneous briefing, your Honor, and we actually think that if the government is going to disavow what they have said in the circumstances, this may be --

        THE COURT:  I can tell you, it's all very preliminary in my head.

        MR. LEVINE:  Yes, your Honor.

        THE COURT:  It occurs to me, acting as a litigator, that the government could take the position that it had cooperated with a number of people and that they were not part of the prosecution team within the meaning of Rule 16 and that those positions were not necessarily inconsistent.

        MR. LEVINE:  I think, your Honor, there are two issues. I understand that. I think there are two issues. Of course, while there's Rule 16, what we take much more seriously here is the <u>Brady</u> issue.

1              THE COURT:  There's not one that's more serious than
2     Brady.  Brady was, of course, the issue that came up in the
3     Newburgh case.
4              MR. LEVINE:  And I think here one of the issues that
5     we are confronting --
6              THE COURT:  But that's not the prosecution team.
7     That's whether it's under the control of the government.
8              MR. LEVINE:  Right,
9              THE COURT:  And I have to tell you, there's a lot of
10    law that says if the New York State authorities have it, it's
11    not under the control of the federal government for Brady
12    purposes, and if that's true of New York State, I'm having a
13    hard time thinking about how if it's in Germany it's going to
14    be under the control of the federal government.  The fact that
15    the federal government has seen it doesn't mean it's under the
16    control of the federal government, I think.  I think that's the
17    law.  You will have an opportunity to persuade me otherwise.
18             MR. LEVINE:  I'm only saying, your Honor, because I do
19    think that this is a fact-specific question about, as the Court
20    points out, questions of control, questions of interaction, one
21    thing that is difficult is that the government will likely take
22    factual positions on the nature of their interactions, and all
23    I'm asking for is that the Court consider giving us an
24    opportunity to test those things, because one of the things, as
25    the government has repeatedly said in its press release, is

1   they talk about the nature of the great benefits and their

2   relationships with these other entities.  And in fact here, the

3   unique issue, your Honor, is that were my client, like his

4   countrymen, standing trial with the SFO in London, we would not

5   have to have this conversation because most of the materials

6   that we want he would have access to.

7            Additionally, on other discovery issues, your Honor,

8   we are very cognizant of the Court's direction to move with

9   speed here.  One of the reasons this also has to be resolved is

10  if, in fact, the Court were not to find that the government has

11  to give us access to some of these materials, the government

12  has in other cases allowed or not objected to letters rogatory

13  and other information that we think is crucial.

14           THE COURT:  I just told you to get it briefed in three

15  weeks so I could decide it.  Don't plan on taking any vacations

16  in the next 12 months.

17           MR. LEVINE:  Thank you, your Honor.  There are a few

18  other issues that we wanted to raise.

19           THE COURT:  Let the government finish first, because I

20  interrupted by saying that I wasn't going to wait on that

21  issue.

22           MR. POWERS:  Yes, your Honor.  The other issue that we

23  think is sort of ripe for briefing at this point relates to a

24  request from the defendants for particulars from the

25  government, and while we're willing to work with them, as I

1    said, on some of the issues I think we're at an impasse.

2    THE COURT: If they want a bill of particulars and
3    you're not giving them a bill of particulars, they're free to
4    make a motion.

5    MR. POWERS: Yes, your Honor.

6    THE COURT: We decide bill of particulars motions all
7    the time. Often we deny them, sometimes we grant them.

8    MR. POWERS: Understood, your Honor.

9    I believe what we discussed, your Honor, between
10   government and counsel, was those are the two main issues, and
11   then everything else, the other issues, we'll try to work
12   through and perhaps come back in a month's time to update your
13   Honor on where we are with respect to the remaining issues.

14   THE COURT: OK.

15   Now you may speak.

16   MR. LEVINE: Thank you very much, your Honor. I agree
17   with counsel that we should come back in a month. There are a
18   couple of issues that I want to flag for the Court because I do
19   that think it's important that the Court understand what we're
20   dealing with on the discovery front. A production has been
21   made, which unfortunately, is not in our view the great
22   majority of discovery. There was a production that was made of
23   approximately one and a half million documents, about 16
24   million pages. Of that, we have, in December, received an
25   index that based on our ability to analyze, only contains about

1  20 percent, 23 percent of the documents that have been
2  produced.  I understand the government is going to try to
3  address that issue in the next month, to the best of their
4  ability.
5           THE COURT:  What does that tell you?  That tells you
6  they haven't read the other 77 percent of the documents.  You
7  know that and I know that.
8           MR. LEVINE:  I wouldn't presume, because I think that
9  one of the problems is the other million documents we know are
10 from the CFTC which were given to the government, and so we are
11 hoping they would use their good offices to see whether there
12 are indices for those, because it is very important.
13          The other issue, Judge, that I think is really
14 critical is those documents, by and large, relate solely to
15 Deutsche Bank.  There are documents from other parties, but
16 most of it is from Deutsche Bank.  There is another database
17 which the government possesses which contains, we understand,
18 12 million documents, not 12 million pages, but tens of
19 millions of pages, which has all of the information from other
20 counterparties in this case.
21          The theory of this case is that our clients somehow
22 defrauded Goldman Sachs and J.P. Morgan and Bear Stearns, and
23 while we'll talk about whether that's a real theory later, we
24 have asked the government to give us access to that because we
25 think it has crucial information about Brady and about the

1  nature of the trading here that is the core of the trial. I
2  know the government is going to go back and see what they can
3  do, and we're appreciative of them using their good offices for
4  that, but I point this out only because that information needs
5  to, under every circumstance, be searched for Brady, because we
6  think there's a massive amount, and we have to have the ability
7  to get access to it. I only raise it, Judge, because the
8  enormity of the size of even that database is so large, it
9  could be, I don't know, 50 million, 100 million documents.

10  Additionally, one of the other issues that we are
11  concerned about is the government is not yet capable of telling
12  us who the supposed counterparties are that were defrauded
13  beyond Goldman Sachs and J.P. Morgan. They say they're going
14  to look at that, but for each of those counterparties we are
15  going to have to be able to get information to address that. I
16  understand the government is going to do what they can, and we
17  appreciate the fact that they're going to give us some
18  information on these issues, but the remarkable scope of the
19  government's theory here and the notion that they may have
20  dozens, many counterparties that we're going to have to address
21  just raises lots of issues, so we hope when we come back here
22  in March that we can have a plan to make sure we can get access
23  to materials in a reasonable way because otherwise it will make
24  this process very unwieldy.
25          THE COURT: The process is already unwieldy.

1           MR. LEVINE:  I'm trying to be optimistic, your Honor.
2           THE COURT:  Don't.  It's unwieldy.  It's unwieldy at
3    the present level.
4           MR. LEVINE:  Right.  I think that the key is for us to
5    make sure we have these indices and make sure we can get access
6    to this database in a reasonable way, because I know we've
7    looked closely at your rulings and I understand you do not want
8    to entertain often applications for subpoena until we have
9    figured out exactly what's in the government's position, and so
10   we want to do this quickly because to the extent that there are
11   gaps in what the defense needs, we want to be able to present
12   that to you in full knowledge of what has already been
13   gathered, because we do think in this case there is real
14   substantial need potentially for, as I've said, both
15   international and other domestic discovery, but we want to do
16   that consistent with this Court's prior rulings that direct us
17   to first try to get to the bottom of what the government has,
18   which is why I'm previewing this for you, having recognized the
19   Court has strong views on this particular issue.  If we cannot
20   come to resolution or if there's just materials the government
21   just doesn't have, we would like to come back to you then with
22   specific, targeted requests for information.  But I preview
23   that for you to know that we're following, I think, the
24   teaching in <u>Binday</u> where you instruct that that's how this has
25   to happen, but if there's some other way you want us to

1    proceed, obviously we're happy to do that.  Thank you.

2              MR. BREEN:  That covered it, your Honor.

3              THE COURT:  That covered it.

4         Does the government have anything it wishes to say in

5    response to that?

6              MR. POWERS:  Your Honor, I would just say that the

7    government doesn't necessarily agree with everything that

8    counsel just described, but again, as we said at the beginning,

9    we'll work with them and see what we can sort out and hopefully

10   come back to your Honor with whatever the sticking points are

11   in 30 days.

12             MR. LEVINE:  Your Honor, may I ask one administrative

13   question?

14             THE COURT:  Sure.

15             MR. LEVINE:  I just want to be clear.  We will now

16   immediately start briefing the team issue, who is on the

17   prosecution team.

18             THE COURT:  Yes.

19             MR. LEVINE:  On the bill of particulars issue, I know

20   the government is going to come back and they're going to give

21   us some information.  We're happy to brief both, but it may be

22   more efficient to do that once we know what the government's

23   going to give us without wasting the Court's time.

24             THE COURT:  The only thing I told you to brief is one

25   issue, and the rest of your motions will be made on a schedule

H1iWconC

1    to be set, but it will be set at our next meeting.
2            MR. LEVINE:  I just wanted to make sure that I
3    understood.  Thank you, your Honor.
4            THE COURT:  All right.  Mr. O'Neill, is it possible
5    that I can meet with these folks the week of February 20?  Is
6    that a bad week?
7            MR. LEVINE:  Your Honor, if possible, the parties
8    tried to coordinate to meet in the afternoon of the 2nd or the
9    morning of the 3rd of March because I know that's when we're
10   all available, if that's convenient for the Court's schedule.
11           THE COURT:  I'm sure you'll have a decision by then.
12   I'll be on trial.  Could we do it late in the afternoon on the
13   2nd?
14           THE CLERK:  4:00, the 2nd.
15           MR. LEVINE:  Thank you very much, your Honor.
16   Appreciate that.
17           THE COURT:  Great.  Time excluded in the interest of
18   justice, the defendants' interests in a speedy trial being
19   outweighed by the need to ascertain what the scope of
20   discovery's going to be and enable the parties to come to some
21   accommodation on disputed discovery issues.
22           Anything else today?
23           MR. LEVINE:  No.  Thank you, your Honor.
24           MR. POWERS:  Nothing from the government.
25           MR. BREEN:  No, your Honor.  Thank you.
                (Adjourned)