**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:16-cr-00370 (CM) |
| v. | ECF Case |
| MATTHEW CONNOLLY and | |
| GAVIN CAMPBELL BLACK, | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GAVIN CAMPBELL BLACK'S MOTION FOR *KASTIGAR* RELIEF

**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone: (212) 223-4400
Facsimile: (212) 223-4425

*Attorneys for Defendant Gavin Campbell Black*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

I.    THE CFTC DIRECTED DEUTSCHE BANK TO CONDUCT AN INTERNAL INVESTIGATION ........................................................................... 2

II.   THE CFTC COLLABORATED WITH THE GOVERNMENT AND OTHER AGENCIES TO OVERSEE EXTERNAL COUNSEL'S HANDLING OF THE INTERNAL INVESTIGATION ................................................................. 4

III.  THE CFTC'S DIRECTION LED PAUL WEISS TO INTERVIEW MR. BLACK .......... 6

IV.  THE REFUSAL TO MEET WITH PAUL WEISS WAS A TERMINABLE OFFENSE AT DEUTSCHE BANK .......................................................... 7

V.   PAUL WEISS DISCLOSED MR. BLACK'S COMPELLED STATEMENTS TO THE GOVERNMENT .......................................................................... 8

VI.  THE GOVERNMENT MADE MISREPRESENTATIONS UNDERLYING THE COURT'S FACTUAL FINDINGS ABOUT MR. BLACK'S FCA TESTIMONY ........ 10

ARGUMENT ........................................................................................................ 13

I.    DISMISSAL IS WARRANTED BASED ON THE CURRENT RECORD OR, ALTERNATIVELY, A *KASTIGAR* HEARING IS NECESSARY TO DETERMINE WHETHER ANY OF THE GRAND JURY OR TRIAL EVIDENCE WAS DERIVED FROM MR. BLACK'S COMPELLED STATEMENTS TO PAUL WEISS .................. 13

    A.    THE GOVERNMENT'S HEAVY *KASTIGAR* BURDEN .................................. 13

    B.    THE GOVERNMENT MUST AFFIRMATIVELY PROVE THAT NONE OF ITS EVIDENCE WAS DERIVED FROM MR. BLACK'S COMPELLED STATEMENTS TO PAUL WEISS ... 14

II.   THE COURT SHOULD VACATE MR. BLACK'S CONVICTION AND DISMISS THE CASE BASED ON THE GOVERNMENT'S FAILURE TO PROVE LACK OF TAINT FROM HIS FCA TESTIMONY OR HOLD A SECOND *KASTIGAR* HEARING RELATING TO HIS FCA TESTIMONY ................................................... 18

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ................................................................................ 15

*D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.,*
    279 F.3d 155 (2d Cir. 2002) ................................................................. 15

*Flagg v. Yonkers Sav. & Loan Ass'n,*
    396 F.3d 178 (2d Cir. 2005) ................................................................. 15

*Garrity v. New Jersey,*
    385 U.S. 493 (1967) ................................................................................ 15

*Gilman v. Marsh & McLennan Cos.,*
    826 F.3d 69 (2d Cir. 2016) ................................................................... 15

*Kastigar v. United States,*
    406 U.S. 441 (1972) ............................................................................ 1, 14

*United States v. Allen,*
    864 F.3d 63 (2d Cir. 2017) ............................................................. 13, 14

*United States v. Hubbell,*
    530 U.S. 27 (2000) .................................................................................. 14

*United States v. Kurzer,*
    534 F.2d 511 (2d Cir. 1976) ........................................................... 13, 14

*United States v. Solomon,*
    509 F.2d 863 (2d Cir. 1975) ................................................................. 15

*United States v. Stein,*
    541 F.3d 130 (2d Cir. 2008) ................................................................. 15

Defendant Gavin Campbell Black respectfully submits this memorandum of law in support of his motion for relief pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972) ("*Kastigar*").

## PRELIMINARY STATEMENT

The Government and its evidence are tainted from exposure to Mr. Black's compelled statements to Deutsche Bank and its counsel. At the mid-trial *Garrity* hearing, Mr. Black demonstrated that the Commodity Futures Trading Commission ("CFTC"), one of the Government's investigative partners in this case, directed Deutsche Bank to hire outside counsel to conduct an internal investigation into its LIBOR submission practices. The CFTC then directed the law firm that Deutsche Bank retained—Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss")—to interview bank employees with relevant information, including Mr. Black. Because a refusal to submit to the directed interviews was a terminable offense, Mr. Black's statements at his interviews with Paul Weiss were involuntary under settled law.

The Government and its investigative partners—including, at the very least, the CFTC, the Financial Conduct Authority ("FCA"), Paul Weiss attorneys and Deutsche Bank employees—had access to Mr. Black's compelled statements to Paul Weiss. Accordingly, dismissal of the case against Mr. Black is the appropriate remedy. If the Court is not inclined to dismiss the case now, discovery and a *Kastigar* hearing are necessary to determine whether any of the trial or grand jury evidence was derived, either directly or indirectly, from Mr. Black's compelled statements to Paul Weiss.

In addition, the Court should vacate Mr. Black's conviction and dismiss the case based on the Government's failure to prove lack of taint, including trial witness taint, from his FCA testimony. In deciding Mr. Black's prior *Kastigar* motion, the Court relied on the Government's statements about its interactions with investigative partners that have been shown to be false and

misleading. The Court's finding that there was no *Kastigar* violation—even though the Government failed to prove that there was no taint resulting from the direct or indirect access that its investigative partners had to Mr. Black's FCA testimony—was based on these false and misleading statements. Because it is now clear that the Government's coordination with its investigative partners was far more extensive than previously disclosed, the Court should conclude that the Government did not meet its burden at the prior *Kastigar* hearing. Alternatively, a second *Kastigar* hearing is necessary to determine whether any grand jury or trial evidence was tainted based on the Government's or its investigative partners' access to Mr. Black's compelled FCA testimony or the evidence derived therefrom.

## BACKGROUND

### I. THE CFTC DIRECTED DEUTSCHE BANK TO CONDUCT AN INTERNAL INVESTIGATION

In approximately April 2010, at the direction of the CFTC, Deutsche Bank hired outside counsel to conduct an internal investigation during which it obtained compelled statements from Mr. Black. Specifically, on April 19, 2010, Stephen J. Obie, the CFTC's Acting Director, sent a letter to Deutsche Bank's Managing Director and General Counsel, Joseph Polizzotto, that advised Deutsche Bank that the CFTC's Division of Enforcement was investigating whether LIBOR Panel Banks submitted false or misleading reports of market information or conditions. [DX 9072 at 1.] The letter further advised Deutsche Bank that the CFTC "expect[ed]" Deutsche Bank "to cooperate fully" with its investigation. [*Id.*] The CFTC's letter also made clear that the expected cooperation included hiring outside counsel to conduct an internal investigation into Deutsche Bank's LIBOR submission practices:

> Accordingly, the Division requests that Deutsche Bank Securities Inc. (and its parent, subsidiaries, affiliates and divisions, collectively referred to as "Deutsche Bank") voluntarily conduct by **external** counsel a full review of Deutsche Bank's U.S. Dollar LIBOR reporting for the relevant time period, and report on an

2

on-going basis the results of that review to the Division, with the review to be completed by no later than September 1, 2010. Further, the Division requests that Deutsche Bank certify that it was in compliance with the Act and Regulations with respect to its reporting of LIBOR and related trading.

[*Id.* (emphasis in original).] The CFTC's letter also enclosed a CFTC Enforcement Advisory Memorandum titled "Cooperation Factors in Enforcement Division Sanction Recommendations," which further made clear the negative consequences that would flow from Deutsche Bank's refusal to accede to the CFTC's requests. [*Id.* at 3-5.]

Based on the CFTC's directive, Deutsche Bank immediately agreed to hire outside counsel—Paul Weiss and Slaughter and May—to conduct an internal investigation. [*See* Tr. 1484:19-1485:1, 1500:19-22 (Ricciardi).] Paul Weiss interviewed Mr. Black as part of this investigation, as Paul Weiss attorney Walter Ricciardi testified at the *Garrity* hearing:

> Q. Why did you conduct an internal investigation?
>
> A. I believed it was initiated because the CFTC wrote a letter to the general counsel of Deutsche Bank, Joe Polizzotto, and said will you have your outside counsel conduct an internal investigation regarding LIBOR issues, and they said yes, and they asked us to do it. We had already been retained, but they then asked us to do the internal investigation with Slaughters in the U.K.
>
> Q. As part of that investigation, did you interview Deutsche Bank employees?
>
> A. Yes.
>
> Q. Did that include Gavin Black?
>
> A. Yes.

[Tr. 1484:19-1485:6 (Ricciardi).]

Also in "April 2010, the DOJ submitted an access request letter to the CFTC as part of its investigation into LIBOR manipulation generally. From this access request letter, the DOJ has received thousands of documents throughout the course of its investigation of Deutsche Bank." [ECF No. 51 at 11.]

## II. THE CFTC COLLABORATED WITH THE GOVERNMENT AND OTHER AGENCIES TO OVERSEE EXTERNAL COUNSEL'S HANDLING OF THE INTERNAL INVESTIGATION

While Mr. Black's access to internal documents of the Government and its investigative partners has been limited by the Government's failure to comply with its discovery and *Brady* obligations, even the limited materials that he received reflect that the Government and its investigative partners directed and oversaw Paul Weiss's investigation. For example, shortly after directing Deutsche Bank's hiring of external counsel, the CFTC had a series of telephone conversations with Paul Weiss. [*See* DX 9080 at DB-SFO-DOJ_02634011 ("confirm[ing] the recent telephone conversations with the CFTC about the internal investigation").] As reflected in a letter from the CFTC to Mr. Ricciardi dated July 14, 2010, the purpose of these conversations was to obtain Paul Weiss's agreement as to the "actions to be taken by [Paul Weiss] as part of the first stage of the internal investigation." [*Id.*] The CFTC's letter documented that Paul Weiss agreed to take numerous investigative actions, including, as discussed *infra*, interviewing "relevant" Deutsche Bank employees such as Mr. Black. The CFTC again made clear that it expected Paul Weiss to provide regular updates on the progress of the internal investigation:

> As we discussed, the CFTC and the [Securities and Exchange Commission ("SEC")] further envision regular updates, initially occurring weekly, from [Paul Weiss] concerning the status and progress of the internal investigation. These updates will include simultaneous productions of responsive documents and information uncovered in the internal investigation.

[*Id.* at DB-SFO-DOJ_02634013.] The CFTC also noted that "the SEC may have additional, separate requests but is working with the CFTC to minimize any unnecessary duplication of effort." [*Id.* at DB-SFO-DOJ_02634011.][1]

---

[1]   Based on the Government's failure to produce discovery from the SEC, Mr. Black has not received the evidence documenting the SEC's additional requests.

Multiple other documents further evidence the CFTC's continued direction of Paul Weiss's investigation. For example, an August 2, 2010 letter from Paul Weiss to the CFTC responded to the requests for information and documents contained in the CFTC's July 14, 2010 letter, as well as to requests made in a June 21, 2010 telephone call. [*See* DX 9076.] Similarly, a November 4, 2010 email documented statements made during a November 1, 2010 meeting (the "November 1 Meeting") between Paul Weiss, the CFTC and the SEC, including, as discussed below, the CFTC's direction that Paul Weiss interview relevant bank employees such as Mr. Black. [DX 9075.]

Ultimately, Deutsche Bank's cooperation through Paul Weiss and Slaughter and May required coordinating the internal investigation with multiple agencies in addition to the CFTC and SEC, including the Government, the FCA, and the U.K. Serious Fraud Office ("SFO"). [Tr. 1496:1-19; 1503:17-23, 1527:20-1528:18 (Ricciardi).] There was a "free flow of communications" between Paul Weiss and Slaughter and May to coordinate the multinational investigation. [Tr. 1497:12-14 (Ricciardi).] As Mr. Ricciardi testified, his firm was "providing the same cooperation about [its] internal investigation to the Department of Justice as [it was] providing to the CFTC." [Tr. 1533:22-25 (Ricciardi).] As part of this coordination, Paul Weiss complied with the CFTC's reporting directive through periodic meetings and calls with both the Government and the CFTC that occurred over a period of years. [*See* Tr. 1503:17-23; 1527:24-1528:5 (Ricciardi).] In a "white paper" that, *inter alia*, summarized Deutsche Bank's cooperation with the Government, Paul Weiss wrote:

> The Bank's substantial efforts to provide the DOJ with the fruits of its investigation in real time over a period of years clearly demonstrate the depth of its commitment to cooperation. Since May 2010, the Bank has held at least 230 telephone calls and 30 in-person meetings with the DOJ (and the CFTC). And for the last 14 months, the Bank has held joint weekly "update" calls with the DOJ and the CFTC designed to provide each with the latest developments in the investigation and an opportunity to follow up on prior discussions and make new requests.

[DX 862 at 49.]

### III. THE CFTC'S DIRECTION LED PAUL WEISS TO INTERVIEW MR. BLACK

In a letter dated October 5, 2018, after Mr. Ricciardi's testimony at the *Garrity* Hearing, the Government asserted that "[n]either the CFTC nor the DOJ directed the challenged action, here, the interview of the Defendant, Gavin Black." [ECF No. 333 at 1 (emphasis in original).] The Government's productions demonstrate that this statement is false.

As reflected in the CFTC's July 14, 2010 letter documenting the agreement as to Paul Weiss's actions in the first stage of the investigation, the CFTC made clear that it expected Paul Weiss to conduct "[i]nterviews of all relevant Bank staff, including those who had knowledge/approval/oversight of, input on or discussions regarding the setting and submission of the Bank's LIBOR." [DX 9080 at DB-SFO-DOJ_02634011.] The CFTC reiterated its expectation that Paul Weiss conduct interviews of relevant personnel during the November 1 Meeting. [*See* DX 9075.] An email documenting the CFTC's statements at that meeting states, *inter alia*:

> The CFTC asked that in addition to completing the email review, we undertake certain additional steps. In brief, those additional steps are that PW:
>
> (a) produce all term-hit documents from the document review; This is approximately 150,000 documents and emails. CFTC asked PW to point out documents that are of interest based on the review . . . .
>
> (b) ***interview King, Curtler, and Nicholls again, this time in person, before Thanksgiving, and that at the same time, to the extent PW learn that King or Curtler regularly interact with or obtain information from others, on the same desk or other desks, PW interview those individuals as well***. CFTC asked about which traders or others King and Curtler talked to in connection with LIBOR fixings, specifically traders in the FX Forwards area and swaps traders.

[*Id.* at DB-SFO-DOJ_02618646 (emphasis added).]

As a result of the CFTC's direction at the November 1 Meeting, Paul Weiss interviewed Mr. Black for the first time "before Thanksgiving." [*Id.*] Specifically, on November 12, 2010, Joyce Huang, one of the Paul Weiss attorneys responsible for the internal investigation, sent an email to Simon Jackson, who worked in compliance at Deutsche Bank, that stated:

[A]s you may recall, the CFTC specifically asked us to look into the extent to which anyone from FX Forwards or Swaps trading was focused on, or involved in conversations about, Deutsche Bank's LIBOR fixings during the relevant period. [Redacted.] Do you agree? If so, and assuming these individuals are still at the bank, could we determine their availability and set up short meetings with them as well?

(*See* Declaration of Seth L. Levine ("Levine Decl.") Ex. 1.) Three days later, on November 15, 2010, Mr. Jackson forwarded Ms. Huang's email to Michael Curtler, James King, and David Nicholls and asked, "Can you confirm the other named members of the team are appropriate for interview by PW?" (*Id.*) Mr. Curtler replied that same day with a list of employees to be interviewed, and Mr. Black was the first employee on Mr. Curtler's list. (*Id.*) Shortly thereafter, Paul Weiss interviewed Mr. Black for the first time during the week of Thanksgiving in November 2010. [*See* Tr. 1486:7-13 (Ricciardi).] Paul Weiss subsequently interviewed Mr. Black again in August 2011 and June 2012. [Tr. 1484: 2-8 (Ricciardi).]

## IV.    THE REFUSAL TO MEET WITH PAUL WEISS WAS A TERMINABLE OFFENSE AT DEUTSCHE BANK

As with most corporations, Deutsche Bank's written compliance policies required all company employees to cooperate with internal investigations conducted at the behest of the Legal Department or face termination. Specifically, Deutsche Bank adopted Global Compliance Core Principles that "set forth . . . ***minimum requirements*** for dealing with compliance-related issues." [DX 572 at 1 (emphasis added).] One such requirement was the mandatory cooperation of company employees. The Core Principles provided that employees "***must*** fully cooperate with Compliance and other appropriate Deutsche Bank departments (*e.g.*, Legal, Group Audit, etc.) handling internal and external examinations, investigations and other reviews involving Deutsche Bank, its customers and other related company activities." [*Id.* at 7 (emphasis added).] Under these policies, which are standard at public companies, if "an employee refuses to participate in a required meeting with legal, they could be subject to termination and other negative job impacts."

[*See* Tr. 1523:8-11; *see also* Tr. 1519:20-1520:10 (Ricciardi).]  And as Mr. Ricciardi testified, Paul Weiss also "probably" would have informed the Government if Mr. Black or any other employee refused to cooperate.  [Tr. 1523:12-16 (Ricciardi).]

Consistent with the Core Principles, Mr. Black did not believe that he had any choice but to meet with the Paul Weiss lawyers and answer their questions.  [ECF No. 234 (Declaration of Gavin Campbell Black ("Black Decl.")) ¶ 3.]  He also believed that had he refused, it would have resulted in his termination from Deutsche Bank.  [*Id.*]  Mr. Black was not represented by counsel at any of the three Paul Weiss interviews.  [*See* Tr. 1486:7-13, 1487:17-20, 1510:24-1511:1 (Ricciardi); Black Decl. ¶ 2.).]

## V.  PAUL WEISS DISCLOSED MR. BLACK'S COMPELLED STATEMENTS TO THE GOVERNMENT

During multiple meetings, starting early in the Government's investigation, Paul Weiss disclosed Mr. Black's compelled statements to multiple members of the Prosecution Team (defined below), including, at the very least, the Government, the CFTC and FCA.  Given his limited access to the relevant discovery, it is unclear to Mr. Black which of the Government's other investigative partners were also exposed to his compelled statements to Paul Weiss.  But what is known is that there were numerous interactions between and among the Government's investigative partners that have not been accounted for in testimony or affidavits.

Though heavily redacted, the limited email records show that Mr. Ricciardi informed the Government during a call on August 26, 2011 that Paul Weiss had interviewed Mr. Black, among others.  [3500-WR-11 at 13 (admitted at the *Garrity* Hr'g).]  The redacted email written by a Government lawyer further reflects that "they [*i.e.*, Paul Weiss] are willing to give us a presentation whenever we want, but they are of the opinion that it would be more fruitful in about a month

when we [hopefully] have the documents and they have completed their next round of interviews." [*Id.*]

Subsequently, in January 2013, the Government discussed with Mr. Ricciardi and others at Paul Weiss "scheduling a meeting to hear summaries of the interviews you all have conducted." [*Id.* at 11.] As part of those conversations, Paul Weiss provided the Government with the full list of employees whose "interview summaries" it presented to the CFTC and FCA (then known as the Financial Services Authority) in October 2012, which included summaries of Paul Weiss's interviews of Mr. Black. [*Id.* at 10.]

According to the 3500 material that the Government produced for Mr. Ricciardi, Deutsche Bank's lawyers provided a "download" of Mr. Black's compelled statements to the Government on January 18, 2013, as documented in three sets of Government notes. (*See* Levine Decl. Exs. 2-4.) None of the notes indicates their author, the identity of the Government or Paul Weiss attendees at this meeting, nor whether anyone from the Government's investigative partners participated in the meeting. (*See id.*) The Government also produced "[d]ocuments related to Gavin Black download by Deutsche Bank on 1/18/13" (*see* Levine Decl. Ex. 5), several of which the Government would go on to question Mr. Black about during its proffer of Mr. Black.

In addition to the "download," it also appears that Paul Weiss provided Mr. Black's compelled statements or information derived therefrom at other meetings with the Government. For example, according to Government-produced notes from a December 5, 2012 meeting between the Government and Paul Weiss, Mr. Ricciardi shared an update of the investigation with at least three prosecutors designated by the initials "EH" and "CE" from the Antitrust Division and "JS," believed to be Jennifer Saulino, from the Criminal Division. (*See* Levine Decl. Ex. 6 at DOJ-A-0009947.) During the meeting, Paul Weiss appeared to recount the statements made at various

interviews with "submitters" and "traders," as well as at least one statement specifically attributed to Mr. Black by name in the Government's notes. (*Id.* at DOJ-A-0009956.) Given the number of interactions between Paul Weiss, Slaughter and May, and the Government, the full extent of the taint cannot be determined based on this record.

## VI. THE GOVERNMENT MADE MISREPRESENTATIONS UNDERLYING THE COURT'S FACTUAL FINDINGS ABOUT MR. BLACK'S FCA TESTIMONY

On October 19, 2017, the Court granted Mr. Black's motion for a *Kastigar* hearing to determine whether the Government's grand jury presentation included information that was derived from compelled testimony that he provided to the FCA on October 3, 2013. [ECF No. 145 at 13-25.] The Court conducted the *Kastigar* hearing on December 13-14, 2017 and April 24, 2018. Prior to the hearing, the Government made a series of misrepresentations concerning its interactions with other investigative agencies on which the Court relied in denying Mr. Black's motion to dismiss on *Kastigar* grounds.

As more fully detailed in Defendants' Motion to Vacate Convictions and Dismiss the Indictment on the Basis of Prosecutorial Misconduct filed contemporaneously, the Government, in several pre-trial filings, knowingly misrepresented its contacts with the domestic and foreign governmental agencies that investigated Deutsche Bank's LIBOR submission practices. [*See, e.g.*, ECF Nos. 51, 60, 130.] Specifically, prior to the *Kastigar* hearing, the parties simultaneously briefed the scope of the Prosecution Team for purposes determining whether the Government had violated its *Brady* and discovery obligations. [*See* ECF No. 51, 53, 58, 60.] Defendants argued that the Government, the CFTC, the SEC, the SFO, the FCA, the German financial regulator BaFin, and other domestic and international regulators (together, the "Prosecution Team") collectively engaged in a multi-year, joint investigation into the alleged manipulation of LIBOR. [*See generally* ECF No. 53.] The Government's Prosecution Team-related briefs contained

outright falsehoods and half-truths designed to mislead the Court and Defendants about the Government's interactions with other members of the Prosecution Team. Among other things, the Government understated the number and nature of its interactions with other Prosecution Team members [*see* ECF No. 51 at 5, 8-12], and falsely stated that it did not share paperwork or discuss the resolution of the investigation with other Prosecution Team members [*compare* ECF No. 60 at 2-3 (representing that "DOJ and these agencies did not share paperwork or have input on what resolution each agency should have (*e.g.* fine amount, violations, etc.)") *with* Levine Decl. Ex. 7 (showing that the FCA sent an excerpt of its draft warning notice to the CFTC in response to the CFTC's request on behalf of itself and the Government) *and* Ex. 8 at DOJ-DB-KAST-0000780 (proving the Government sent its draft statement of facts that it planned to attach to its deferred prosecution agreement with Deutsche Bank to the FCA).]

The Court relied on the Government's misrepresentations in the Prosecution Team briefs about its interactions with investigative partners in determining its burden at the *Kastigar* hearing. Specifically, the Court rejected Mr. Black's argument that the Government did not meet its burden because it failed to present any evidence, in the form of affidavits or otherwise, sufficient to prove that its investigative partners, including the CFTC, did not directly or indirectly expose the Government or the witnesses on which it relied in the grand jury presentation to Mr. Black's compelled FCA testimony. [*See, e.g.*, April 24, 2018 *Kastigar* Tr. 293:15-21.] In addition, the Court made a number of findings of fact in its order denying Mr. Black's motion to dismiss on *Kastigar* grounds that were based on the Government's false representations concerning its relationship with the other members of the Prosecution Team. [*See* ECF No. 264 ¶¶ 1, 3 (finding "parallel investigations").]

While some of the Government's misrepresentations came to light prior to the *Kastigar* hearing, the *Garrity* hearing revealed the scope of the Government's misrepresentations about its interactions with the other members of the Prosecution Team. [Tr. 2315:8-2316:14.] In particular, the Government failed to apprise the Court that it and other members of the Prosecution Team jointly outsourced portions of the investigation to Deutsche Bank and its counsel, Paul Weiss and Slaughter and May. [*See, e.g.*, DX 9072 at 1; Tr. 1484:19-1485:1, 1493:20-23, 1496:1-19, 1503:17-23, 1527:20-1528:5, 1533:22-25 (Ricciardi).] This outsourcing raises particular problems for the Government in terms of meeting its *Kastigar* burden with respect to Mr. Black's FCA testimony because, as Mr. Ricciardi testified, Deutsche Bank and its counsel also coordinated with the FCA "as soon as they got involved." [Tr. 1496:12-17 (Ricciardi).] In fact, once this information was brought to its attention, the Court acknowledged that it did not fully appreciate the nature of Mr. Black's arguments concerning the implications that the Government's coordination with its investigative partners had on the *Kastigar* and other defense motions. [Tr. 2315:8-2316:14.]

Moreover, the pre-trial *Kastigar* hearing only addressed whether Mr. Black's FCA testimony tainted the grand jury presentation. The Court did not address whether any of the Government's trial witnesses were tainted through direct or indirect exposure to Mr. Black's compelled testimony, and most of the trial witnesses did not submit affidavits addressing their or their counsels' interactions with the FCA or other Prosecution Team members with access to information derived from Mr. Black's FCA testimony.

# ARGUMENT

## I. DISMISSAL IS WARRANTED BASED ON THE CURRENT RECORD OR, ALTERNATIVELY, A *KASTIGAR* HEARING IS NECESSARY TO DETERMINE WHETHER ANY OF THE GRAND JURY OR TRIAL EVIDENCE WAS DERIVED FROM MR. BLACK'S COMPELLED STATEMENTS TO PAUL WEISS

Dismissal is warranted based on the record. In the alternative, a *Kastigar* hearing is necessary to determine the extent to which Mr. Black's compelled statements to Paul Weiss permeated the Government's case. Based on the limited materials that Mr. Black has received, Paul Weiss provided his compelled statements to the Government, including members of the trial team, and various other governmental and non-governmental entities who interacted with the Government and the trial witnesses in this case. These other entities include, at the very least, the CFTC, FCA, Paul Weiss, Slaughter and May, Deutsche Bank, and likely other members of the Prosecution Team. As a result, the Government cannot meet its *Kastigar* burden unless it demonstrates that none of its trial or grand jury evidence was derived, either directly or indirectly, from the exposure of anyone from the Government and these other entities to Mr. Black's compelled statements to Paul Weiss.

### A. THE GOVERNMENT'S HEAVY *KASTIGAR* BURDEN

*Kastigar* is intended to provide defendants with "a comprehensive safeguard" and "very substantial protection." *United States v. Allen*, 864 F.3d 63, 91 (2d Cir. 2017). Unlike the Fourth Amendment's exclusionary rule, which applies only when necessary to deter wrongful governmental conduct, immunity conferred under the Fifth Amendment is designed to ensure that an individual who provides compelled testimony is "left 'in substantially the same position as if (he) had claimed the Fifth Amendment.'" *United States v. Kurzer,* 534 F.2d 511, 516 (2d Cir. 1976) (quoting *Kastigar*, 406 U.S. at 462); *see Allen*, 864 F.3d at 91. *Kastigar* imposes a "'total prohibition'" on the use of a defendant's compelled testimony, as well as any evidence directly or

indirectly derived therefrom. *Id.* (quoting *Kastigar*, 406 U.S at 460). This prohibition includes, *inter alia*, "the use of compelled testimony as an investigatory lead" and "'the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.'" *Id.* (quoting *Kastigar*, 406 U.S. at 460); *see also United States v. Hubbell*, 530 U.S. 27, 39 (2000) (stating that, in *Kastigar*, "[w]e particularly emphasized the critical importance of protection against future prosecution 'based on knowledge and sources of information obtained from the compelled testimony'") (quoting *Kastigar*, 406 U.S. at 454).

Where a defendant has provided compelled testimony on matters related to the federal prosecution, the government has the "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461-62; *see also Allen*, 864 F.3d at 91. To meet this burden, the Government has "'the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source ***wholly independent*** of the compelled testimony.'" *Allen*, 864 F.3d at 91 & n.130 (emphasis added) (quoting *Kastigar*, 406 U.S. at 460); *see also Kurzer*, 534 F.2d at 516.

## B. THE GOVERNMENT MUST AFFIRMATIVELY PROVE THAT NONE OF ITS EVIDENCE WAS DERIVED FROM MR. BLACK'S COMPELLED STATEMENTS TO PAUL WEISS

As the Court stated during the trial, "for *Kastigar* purposes, the government is the government. Forget about whether there was one investigation or there were three investigations. For *Kastigar* purposes, the United States of America is one entity." [Tr. 2328:11-14.] Because Mr. Black's statements to Paul Weiss were compelled based on conduct fairly attributable to a governmental entity—in this case, at the very least, the CFTC—the Court should hold a *Kastigar* hearing to determine whether Mr. Black's compelled statements to Paul Weiss tainted the investigation or prosecution of this case.

In *Garrity v. New Jersey*, 385 U.S. 493 (1967), the Supreme Court held that statements obtained from police officers under threat of termination are involuntary under the Fifth Amendment. *Id.* at 497 (finding that it is "the antithesis of free choice" to present an individual with the "option to lose their means of livelihood or to pay the penalty of self-incrimination"). The *Garrity* rule applies to private employers where its actions are "fairly attributable to the government." *United States v. Stein*, 541 F.3d 130, 152 n.11 (2d Cir. 2008). Private conduct meets this standard when "there is a sufficiently close nexus between the [government] and the challenged action." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Stein*, 541 F.3d at 146. Situations in which the close nexus requirement is met include:

> [W]hen the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with *significant encouragement*, either overt or covert, or when the private actor operates as a *willful participant in joint activity* with the State or its agents . . . or is *entwined with governmental policies.*

*Stein*, 541 F.3d at 147 (emphasis in original) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005)).

In *Gilman v. Marsh & McLennan Cos.*, 826 F.3d 69 (2d Cir. 2016), the Second Circuit addressed the standard that applied to determine whether the close nexus test is met in the context of a corporate internal investigation. In that case, the court found that the Government did not bear responsibility for the company's actions because there was no evidence that the prosecution authority "'forced' [the entity] to demand interviews, 'intervened' in [its] decisionmaking, 'steered' [it] to request interviews, or 'supervised' the interview requests." *Gilman*, 826 F.3d at 76; *see also Stein*, 541 F.3d at 150 (distinguishing several prior decisions finding no state action— namely, *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir. 2002) and *United States v. Solomon*, 509 F.2d 863 (2d Cir. 1975)—based on the fact that the request for interviews in those cases was not generated by governmental persuasion or collusion).

All four of the types of conduct identified in *Gilman* as sufficient to establish the close nexus test are present here. Not only did the CFTC force Deutsche Bank to hire Paul Weiss to conduct an internal investigation under threat of sanction [*see* DX 9072], it required that Paul Weiss interview "all relevant Bank staff" including those who had "discussions regarding the setting and submission of the Bank's LIBOR," which included Mr. Black [*see* DX 9080 at DB-SFO-DOJ_02634011-12]. The CFTC also made a specific request for information that directly led Paul Weiss to interview Mr. Black for the first time. (*See* Levine Decl. Ex. 1.)

Moreover, the CFTC and the Government took an active role in Paul Weiss's internal investigation from its inception. Prior to any of Mr. Black's interviews, Paul Weiss informed the Government of Deutsche Bank's intention to cooperate, and the Government in turn directed Paul Weiss to apprise it of the actions it planned to take in the internal investigations. [DX 9021 at DOJ-A-0010359-60.] The CFTC also insisted that Paul Weiss provide regular status updates along with simultaneous productions of documents and information "designed to provide [the Government and CFTC] with the latest developments in the investigation and an opportunity to follow up on prior discussions and make new requests." [*See, e.g.*, DX 862 at 49; DX 9075; DX 9080 at DB-SFO-DOJ_02634013; *see also* Tr. 1527:24-1528:5 (Ricciardi).]

Based on this direction, Paul Weiss's interviews were a frequent topic of discussion between the Government and Paul Weiss. This included Paul Weiss asking for and receiving the Government's permission to schedule follow-up interviews with Mr. Black and other Deutsche Bank employees in 2014. (*See* Levine Decl. Ex. 9; *see also* DX 9061.) In addition, Paul Weiss not only reported what occurred during its interviews, but the Government also gave Paul Weiss direction concerning how to conduct its interviews. This direction included the Government, on at least one occasion, insisting that one of the Paul Weiss attorneys give the Government his "word

that he will approach this interview as if he were a prosecutor." [DX 9059 at 1-2.] When the Government reported this to the FCA, the FCA responded that "[w]e appreciate **your Machiavellian approach** with asking for Paul Weiss to conduct the interview." [*Id.* (emphasis added).] Accordingly, in addition to directing Paul Weiss to interview Mr. Black, the CFTC, together with the Government, intervened in Paul Weiss's decisionmaking and supervised the conduct of Paul Weiss's investigation, including the interview requests. Although the Court did not rule on this issue during trial, the Court remarked that the evidence was "highly persuasive." [Tr. 2358:21-23.]

In addition, Mr. Black's statements to Paul Weiss were involuntary as they were made under threat of termination, as the Government well knew. Deutsche Bank's written compliance policies—which Paul Weiss produced to the Government—required all employees to cooperate with internal investigations conducted by the Legal Department or face termination. [DX 572 at DOJ-SFO-DB-00002678, 82.] Mr. Ricciardi testified that it is standard that at public companies, such as Deutsche Bank, an employee who "refuses to participate in a required meeting with legal . . . could be subject to termination and other negative job impacts." [Tr. 1519:20-1520:10, 1523:8-11 (Ricciardi); *see also* Tr. 1526:13-15 (Ricciardi).] In accordance with Deutsche Bank's policies, Mr. Black did not believe that he had any choice but to agree to meet with the Paul Weiss lawyers and answer their questions, and that his refusal to do so would have resulted in his termination. [Black Decl. ¶ 3.]

The Court therefore should conclude that Paul Weiss's interviews of Mr. Black were compelled and fairly attributable to a governmental actor for purposes of the Fifth Amendment. As a result, the Court should hold a *Kastigar* hearing at which the Government must prove that none of the trial or grand jury evidence was derived, either directly or indirectly, from Mr. Black's

compelled statements to Paul Weiss based on the exposure of it or its investigative partners, including, but not limited to, the CFTC, FCA, Paul Weiss, Slaughter and May and Deutsche Bank. While the Court relied on affidavits, as opposed to live testimony, in deciding Mr. Black's prior *Kastigar* motion [*see* ECF 145 at 18], Mr. Black respectfully submits that the Court should require the Government to call any witnesses on which it intends to rely at the *Kastigar* hearing given the Government's history of false statements and other improper conduct in this case, as set forth in Mr. Black's motion to dismiss on the basis of prosecutorial misconduct.

## II. THE COURT SHOULD VACATE MR. BLACK'S CONVICTION AND DISMISS THE CASE BASED ON THE GOVERNMENT'S FAILURE TO PROVE LACK OF TAINT FROM HIS FCA TESTIMONY OR HOLD A SECOND *KASTIGAR* HEARING RELATING TO HIS FCA TESTIMONY

The Court should vacate Mr. Black's conviction and dismiss the Indictment on the current record based on the Government's failure to meet its burden at the initial *Kastigar* hearing. The Court already gave the Government a chance to come forward with sufficient evidence to show that Mr. Black's FCA testimony did not taint its presentation of evidence to the grand jury. Instead of meeting its burden, the Government made a series of misrepresentations, on which the Court relied, in seeking to limit the evidence that it was required to present. Now that it is clear that the Government's coordination with other Prosecution Team members was far more extensive than disclosed, the Court should not give the Government a second bite at the apple. Mr. Black's conviction should be vacated, and the Indictment dismissed based on the Government's failure to meet its heavy burden at the *Kastigar* hearing. Alternatively, the Court should hold a second *Kastigar* hearing to determine the extent of taint from Mr. Black's FCA testimony for several reasons.

First, given the Government's misrepresentations concerning its interactions with its investigative partners, the Court should revisit the *Kastigar* issue with respect to Mr. Black's

compelled testimony to the FCA. As is now clear, the Government jointly investigated this case with the other Prosecution Team members and outsourced significant portions of its investigation to Deutsche Bank and its outside counsel, Paul Weiss and Slaughter and May, each of whom had repeated interactions with the FCA after it took Mr. Black's compelled testimony. At the first *Kastigar* hearing, the Government offered no evidence to demonstrate that any of the individuals at these other entities did not have access to Mr. Black's compelled testimony or any evidence derived therefrom. Nor did the Government prove that any such access did not taint the evidence that it used in the investigation and prosecution of this case. To the extent the Court does not grant Mr. Black's *Kastigar* motion on the current record based on the Government's failure to produce any evidence that demonstrates that its investigative partners were not tainted, a second *Kastigar* hearing should be held to resolve the issue.

Second, a *Kastigar* hearing should be held to determine whether any trial witness or evidence was tainted by Mr. Black's FCA testimony. Most of the evidence that the Government introduced at trial was first produced by Deutsche Bank—which interacted with the FCA—to another Prosecution Team member that interacted with the FCA—including the CFTC and SFO— before the Government obtained it. The Government must therefore affirmatively prove that none of this evidence was gathered or identified as significant based on Mr. Black's FCA testimony or anything derived therefrom.

In addition, most of the trial witnesses did not submit affidavits addressing their or their counsels' interactions with the FCA, Deutsche Bank, its counsel or other Prosecution Team members with access to information derived from Mr. Black's FCA testimony. For example, none of the Paul Weiss lawyers nor Slaughter and May lawyers testified during the *Kastigar* Hearing, nor provided sworn affidavits about their interactions with trial witnesses. Mr. Curtler, who was

involved in Deutsche Bank's internal investigation and interacted with Deutsche Bank's compliance and legal personnel (*see* Levine Decl. Ex. 1), similarly did not address the interactions with Deutsche Bank and its attorneys [ECF No. 158, Ex. 4; ECF No. 166, Ex. 4A]. Thus, the Government has not negated the possibility that the trial witnesses were tainted by Mr. Black's compelled testimony. Now that the Court has the full trial record, the Government should be put to its burden of proving that none of the trial witnesses had access to Mr. Black's compelled testimony or information derived therefrom.

## **CONCLUSION**

For the foregoing reasons, to the extent the Court does not dismiss this case, the Court should hold a *Kastigar* hearing and grant such further relief that it deems just and proper.

Dated: New York, New York
            December 10, 2018

Respectfully Submitted:

By: /s/ Seth L. Levine
        Seth L. Levine
        Scott B. Klugman
        Miriam L. Alinikoff
        Dylan A. Stern

**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425
slevine@levinelee.com
sklugman@levinelee.com
malinikoff@levinelee.com
dstern@levinelee.com

*Attorneys for Defendant Gavin Campbell Black*