**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

MATTHEW CONNOLLY and
GAVIN CAMPBELL BLACK,

*Defendants*.

No. 1:16-cr-00370 (CM)

ECF Case

**ORAL ARGUMENT REQUESTED**


**PARTIAL REPLY MEMORANDUM IN FURTHER SUPPORT**
**OF DEFENDANT GAVIN CAMPBELL BLACK'S MOTION FOR *KASTIGAR* RELIEF**


**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425

*Attorneys for Defendant Gavin Campbell Black*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT…………………………………………………………………………...4

I.      THE GOVERNMENT MISSTATES THE *GARRITY* STANDARD............................... 4

      A.      *Garrity's* State Action Requirement Does Not Require that a Government Actor Expressly Direct the Private Entity to Threaten an Adverse Employment Action ................................................................................ 4

      B.      *Garrity* Does Not Require Explicit Threat of Termination .................................... 6

II.     A HEARING IS NECESSARY TO DETERMINE THE EXTENT OF GOVERNMENT OUTSOURCING ................................................................... 10

      A.      The Current Record Establishes a *Prima Facie* Showing that Mr. Black's Fifth Amendment Rights Were Violated ............................................................ 11

      B.      An Evidentiary Hearing Is Required to Determine the Exact Relationship Between the Government and Deutsche Bank and the Extent of Government Outsourcing ........................................................................................................ 13

      C.      The Hearing in *Blumberg* Provides the Blueprint that the Court Should Consider for the Hearing and Discovery Required in this Case ........................... 16

CONCLUSION ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blum v. Yaretsky,*
   457 U.S. 991 (1982)................................................................................................. 4, 15

*D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.,*
   279 F.3d 155 (2d Cir. 2002).......................................................................................... 5

*Garrity v. New Jersey,*
   385 U.S. 493 (1967)....................................................................................................... 9

*Gilman v. Marsh & McLennan Cos., Inc.,*
   826 F.3d 69 (2d Cir. 2016)............................................................................................ 6

*Horvath v. Westport Library Ass'n,*
   362 F.3d 147 (2d Cir. 2004).......................................................................................... 4

*Lefkowitz v. Turley,*
   414 U.S. 70 (1973)....................................................................................................... 12

*McKinley v. City of Mansfield,*
   404 F.3d 418 (6th Cir. 2005) ........................................................................................ 8

*United States ex rel. Sanney v. Montanye,*
   500 F.2d 411 (2d Cir. 1974)................................................................................... 4, 5, 7

*United States v. Allen,*
   864 F.3d 63 (2d Cir. 2017)..................................................................................... 11, 12

*United States v. Blumberg,*
   14-CR-00458 (D.N.J.)............................................................................................ *passim*

*United States v. Ferguson,*
   No. 06-CR-137, 2007 WL 4240782 (D. Conn. Nov. 30, 2007) ............................... 10

*United States v. Friedrick,*
   842 F.2d 382 (D.C. Cir. 1988)...................................................................................... 8

*United States v. Indorato*,
   628 F.2d 711 (1st Cir. 1980) ................................................................................. 10

*United States v. Johnson*,
   No. 97-1231, 1997 WL 792443 (2d. Cir. 1997) ...................................................... 9

*United States v. Risha*,
   445 F.3d 298 (3d Cir. 2006) ............................................................................ 16, 17

*United States v. Roberts*,
   660 F.3d 149 (2d Cir. 2011) ............................................................................ 7, 8, 9

*United States v. Roberts*,
   No. 07-CR-425, 2009 WL 700188 (E.D.N.Y. Mar. 13, 2009). ................................. 9

*United States v. Solomon*,
   509 F.2d 863 (2d Cir. 1975) ............................................................................. 9, 10

*United States v. Stein*,
   435 F. Supp. 2d 330 (S.D.N.Y. 2006) ................................................................... 16

*United States v. Stein*,
   440 F. Supp. 2d 315 (S.D.N.Y. 2006) ........................................................... *passim*

*United States v. Stein*,
   541 F.3d 130 (2d Cir. 2008) .............................................................................. 4, 15

*United States v. Trevino*,
   215 F. App'x 319 (5th Cir. 2007) ...................................................................... 8, 10

Defendant Gavin Campbell Black respectfully submits this partial reply memorandum of law in further support of his motion for *Kastigar* relief pursuant to the Court's February 7, 2019 Order (the "Scheduling Order").[1]

## PRELIMINARY STATEMENT

The Government's opposition demonstrates that it desperately wants to avoid this Court or the defense from shining a light on the behind-the-scenes interactions between and among it, the domestic and foreign governmental agencies that participated in the LIBOR investigation, and Deutsche Bank and its counsel. Given the evidence presented during the initial *Garrity* hearing, a further hearing is necessary to permit the Court to assess, on a full record, the constitutional implications of the Government's use of Deutsche Bank and its outside counsel as the advance team to build the case presented to the grand jury and at trial. The Court made this clear in its December 19, 2018 Order when it stated that any opposition to Mr. Black's motion "will likely require the Government to offer a great deal of evidence about what it (not Deutsche Bank/Paul Weiss) did to investigate this case between 2010 and 2015." [ECF No. 406 at 1-2.] Ignoring the Court's Order, the Government did not offer a single declaration concerning its investigative efforts or its interactions with Deutsche Bank and its attorneys. It similarly offered no evidence regarding the interactions that it and Deutsche Bank had with its other governmental investigative partners, including, but not limited to, the Commodities Futures Trading Commission ("CFTC"), the Securities and Exchange Commission ("SEC"), the United Kingdom's Financial Conduct

---

[1] The Scheduling Order ordered Mr. Black to respond only to the Government's *Garrity* arguments by February 13, if possible. [ECF No. 414.] Accordingly, this response addresses only those Government arguments that are confined strictly to whether a *Garrity* violation occurred, and not also to *Kastigar* issues, including the appropriateness of a *Kastigar* inquiry as a remedy for a *Garrity* violation. Mr. Black reserves all rights to respond to the remaining arguments raised in the Government's *Kastigar* opposition in his forthcoming responsive briefing, including those that, while not strictly confined to *Garrity*, may also touch on the *Garrity* standard.

Authority ("FCA"), the Serious Fraud Office ("SFO"), and other agencies (together with the Government and Deutsche Bank, the "Prosecution Team").

The Government instead attempts to avoid addressing the consequences of its actions by misstating the applicable legal standard.  Contrary to the Government's assertion, there are no magic words that the Government was required to use in communicating with Deutsche Bank and its attorneys, or that Deutsche Bank and its attorneys were required to use in communicating with Mr. Black, for there to be a *Garrity* violation.  *Garrity* involves a totality of the circumstances test in which state action and employer coercion can be found under multiple different circumstances. Mr. Black, at the very least, made a *prima facie* showing of a *Garrity* violation at the initial hearing, and, to the extent the Government asserts that it does not bear responsibility for Mr. Black's compelled interviews, such an assessment must be made on a full evidentiary record.

Nor can the Government avoid a full evidentiary hearing in this matter by arguing that the issue of outsourcing has no bearing on whether there was a *Garrity* violation in this case.  As an initial matter, the Court should reject the Government's unsworn representations concerning the relationship between and among members of the Prosecution Team, including Deutsche Bank, given its history of false representations on this issue.  In addition, the Government's suggestion that it is free to deputize Deutsche Bank and its counsel to investigate criminal activity on its behalf and then disclaim responsibility for Deutsche Bank's conduct because a "private actor remains a private actor" [ECF No. 409 (Government's Opposition Brief ("Opp.") at 36] is meritless.  It is well-settled that the Government is responsible for the conduct of a private actor under numerous circumstances, including, but not limited to, where it exercises coercive power, provides significant encouragement to the private actor or delegates a public function (such as the investigation of a criminal case).

Notably, the Government, including the Fraud Section, took a similar tack before Chief Judge Linares in *United States v. Blumberg*, 14-CR-00458 (D.N.J.), arguing that a private corporate cooperator could not be a member of the prosecution team for *Brady* purposes despite evidence that, like here, the Government delegated its investigatory responsibilities. Chief Judge Linares, however, held that the court could not rule on the constitutional issue without first holding an evidentiary hearing, following discovery, to determine "the exact relationship between the Government and [the cooperating company] in the context of the instant prosecution and also the extent to which the Government outsourced and/or delegated discovery and investigation tasks to [the cooperating company]." (Levine Decl. Ex. A (Filing 113 (6/7/16 Order)) at 1-2.)

For similar reasons, to the extent the Court does not move directly to the issue of remedy for the violation of Mr. Black's constitutional rights, it should expand the *Garrity* hearing to determine the full extent of the Government's coercive influence over Deutsche Bank's investigation. The Government's corporate cooperation program as applied in this case demonstrates a well-orchestrated effort to deploy Deutsche Bank and its outside attorneys to extract information from Mr. Black and others by forcing them to choose between cooperating and their livelihood. Further, the Government has carefully structured the apparatus of corporate cooperation to use private firms as a proxy to maximize the coercive power of the state. The Government's opposition demonstrates, as was also the case in *Blumberg*, that it is desperate to avoid having the Court or the public probe its program because it fears transparency. For these reasons, the Government wants no factual record, no review of its actual means and methods of deploying its public and private investigatory assets, and no information on the insidious way in which it compels institutions to toe the line to create the illusion that state action is not present.

## ARGUMENT

## I.   THE GOVERNMENT MISSTATES THE *GARRITY* STANDARD

### A.   *Garrity's* State Action Requirement Does Not Require that a Government Actor Expressly Direct the Private Entity to Threaten an Adverse Employment Action

Contrary to the Government's assertion (*see* Opp. at 24), governmental "responsibility" for a private entity's compelled interview does not require a showing that the Government expressly directed the private actor to terminate or sanction an employee who refuses to speak.  *See, e.g.*, *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 154 (2d Cir. 2004) ("[T]he Supreme Court has cautioned that the concept of responsibility is not to be read narrowly in the context of the state action inquiry.")  Rather, there need only be a "close nexus" between the governmental actor and the challenged action.  *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *United States v. Stein*, ("*Stein II*"), 541 F.3d 130, 146 (2d Cir. 2008).  This standard is satisfied under a number of different circumstances not requiring express direction of constitutionally inappropriate conduct, including when a governmental actor:   (1) exercises coercive power;  (2) is entwined in the management or control of the private actor; (3) provides the private actor with significant encouragement, either overt or covert; (4) engages in joint activity in which the private actor is a willful participant; (5) delegates a public function to the private actor; or (6) entwines the private actor in governmental policies*. Stein II*, 541 F.3d at 147.  The "controlling factor" in this analysis is not whether the state directed the constitutionally prohibited conduct, but whether the state "involved itself in the use of a substantial economic threat to coerce a person into furnishing an incriminating statement."  *United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 415 (2d Cir. 1974) ("*Montanye*").  As the Second Circuit stated:

> *The state's involvement is no less real for having been indirect* and no less impermissible for having been concealed.  The state is prohibited in either event

4

from compelling a statement through coercive means, *whether they are direct or indirect*.

*Id.* (emphasis added); *see also D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162-63 (2d Cir. 2002) (upholding the district court's finding that the NASD's Criminal Prosecution Unit "may well be a state actor," but finding no governmental involvement because the compelled interview was requested by NASD employees who were "walled off" from the Unit and was not generated by governmental persuasion or collusion either directly or indirectly through the Unit).

Moreover, the cases cited by the Government have found *Garrity*'s state action requirement to be met even where the governmental actor did not direct the private entity to threaten an adverse employment action. In *Montanye*, the state was held responsible for compelled statements obtained by a private employer during a polygraph examination where the state merely requested that the employer conduct the examination and the threat of termination was made by the private employer. 500 F.2d at 413, 415.[2] Similarly, in *United States v. Stein*, 440 F. Supp. 2d 315 (S.D.N.Y. 2006) ("*Stein I*"), the Court held that the Government was responsible for KPMG (a private employer) pressuring its employees to submit to Government proffers on threat of termination, even though the Government did not specifically direct KPMG to apply such pressure. *Id.* at 336-37. Rather, the Government indirectly involved itself in KPMG's coercive actions by: reminding KPMG that it would consider the corporate cooperation policies set forth in the Thompson Memorandum; explaining that it would evaluate KPMG's payment of employee legal fees; and reporting to KPMG the identity of employees who refused to make statements. *Id.* The

---

[2] The *Montanye* court concluded that there was no *Garrity* violation because the economic sanction was not "substantial" where the employee had worked for the employer for only one or two days at the time of the polygraph examination. *Id.* The Government does not argue that the threat of termination would not be a substantial penalty to Mr. Black who worked for Deutsche Bank for over seventeen years at the time of the compelled interviews.

Court squarely attributed KPMG's coercive conduct to the Government's indirect pressure, finding that "the Government, both through the Thompson Memorandum and the actions of the USAO, quite deliberately coerced, and in any case significantly encouraged, KPMG to pressure its employees to surrender their Fifth Amendment rights." *Id.* at 337.[3]

The Government's argument as to the appropriate standard is also refuted by the Second Circuit's decision in *Gilman v. Marsh & McLennan Cos.*, *Inc.*, 826 F.3d 69 (2d Cir. 2016). As noted in Mr. Black's opening brief, *Gilman* indicated that the Government bears responsibility for a private employer's compelled interviews during a corporate internal investigation where a governmental actor "'forced' [the entity] to demand interviews, 'intervened' in [its] decisionmaking, 'steered' [it] to request interviews, or 'supervised' the interview requests." *Id.* at 76. At no point did the *Gilman* court suggest that the Government must also specifically direct the employer to threaten termination of an uncooperative employee to satisfy the close nexus test.

Accordingly, there is no merit to the Government's assertion that state action under *Garrity* requires that a governmental actor specifically direct the private entity to threaten adverse employment action, and the Court should reject the Government's narrow view of its responsibility in determining whether there is a *Garrity* violation in this case.

### B.     *Garrity* Does Not Require Explicit Threat of Termination

The Government's position that there can be no *Garrity* violation unless Deutsche Bank explicitly threatened Mr. Black with termination is equally unavailing. In an attempt to sidestep

---

[3] The Government notably misstates the order of events leading to the defendant's decision to talk with prosecutors in *Stein I* even though it characterizes the sequencing as "significant." (*See* Opp. at 28.) Contrary to the Government's representation, the threat to cut off legal fees occurred prior to the defendant's refusal to speak with the Government. *Stein I*, 440 F. Supp. 2d at 330. The Government thereafter reported the defendant's refusal to KPMG, and KPMG threatened to terminate the employee without being directed to do so by the Government. *Id.* The defendant only then "rejected his attorney's advice and agreed to proffer in order to save his job." *Id.*

the Second Circuit's totality of the circumstances approach, the Government argues that "[a] *Garrity* violation cannot be found where a defendant is not threatened with the specific, direct choice of speak or face the automatic punishment of being fired."  (Opp. at 13.)   But the Government's bright-line standard is without foundation and contradicted by clear precedent in this and other circuits.

In the Second Circuit, "[t]he state is prohibited . . . from compelling a statement through economically coercive means, whether they are direct or indirect," and a "statement challenged on the ground that it was obtained as the result of economic sanctions must be rejected as involuntary . . . where the pressure reasonably appears to have been of sufficiently appreciable size and substance to deprive the accused of his free choice."  *Montanye*, 500 F.2d at 415 (internal quotation omitted).  The reasonability of the alleged coercion "depends on an assessment of the totality of the circumstances," and a "significant threat of economic harm or economic sanctions— *whatever the form*—could violate a defendant's Fifth Amendment right."  *United States v. Roberts*, 660 F.3d 149, 156 (2d Cir. 2011) (internal quotation omitted) (emphasis added); *see also id*. (explaining that a "threat[] of job loss" is not " a necessary element of any economic coercion claim").

Given these principles, this Court has thus held that the appropriate standard for an "employee['s] claim[] that a statement was coerced by a threat of employment termination" is whether "the belief that termination would follow a refusal to speak was both objectively reasonable and subjectively held."  *Stein I*, 440 F. Supp. 2d at 328 (collecting cases).  That is, the employee "must adduce evidence both that the individual subjectively believed that he or she had no real choice but to speak and that a reasonable person in that position would have felt the same

way," which then shifts "the burden of proving that [the statement] was voluntary [to] the government." *Id*. at 328 & n.68 (emphasis omitted).

The Government's argument that an economic coercion claim depends on a defendant being "affirmatively told that if he did not speak, he would be terminated" (Opp. at 15), is flatly inconsistent with the requirement that the Court apply a subjective and objective reasonability test based on the totality of the circumstances.   Indeed, a laundry list of appellate cases—including those cited by *Stein I*—make clear that there is no such requirement.  *See, e.g.*, *Stein I*, 440 F. Supp. 2d at 328 n.67 (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 436 (6th Cir. 2005) ("Indeed, if McKinley reasonably believed that Defendants would impose substantial penalties on him— such as job loss or disciplinary sanctions—if he refused to answer[,] . . . he was compelled to incriminate himself in violation of the Fifth Amendment."); *United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988) ("Under the *Garrity–Lefkowitz–Murphy* line of authority, Friedrick must have in fact believed his January statements to be compelled on threat of loss of job and this belief must have been objectively reasonable.")); *see also, e.g.*, *United States v. Trevino*, 215 F. App'x 319, 321 (5th Cir. 2007) (rejecting the requirement of an "explicit threat" and finding that "[n]either *Indorato* or *Garrity* rules out the possibility that implied threats could violate a defendant's *Garrity* rights").

Moreover, the Second Circuit in *Roberts*—a case on which the Government itself relies (*see* Opp. at 17, 21-23)—rejected an absolute standard or the requirement that the economic threat take a particular "form."  660 F.3d at 156.  Rather, in *Roberts,* the Second Circuit clarified that an explicit threat of job loss was *not* a necessary element under *Garrity*, and that the determination of whether the economic threat "reasonably appear[ed] to have been of sufficiently appreciable size and substance" must be assessed on "the totality of the circumstances."  *Id.*  (internal quotation

omitted); *see also id.* ("In assessing the totality of the evidence in this case, the district court focused on threats of job loss *not because it mistakenly thought that job loss was a necessary element of any economic coercion claim*, but because that was the type of economic coercion to which Roberts himself claimed to have been subjected.") (emphasis added).[4]  Such a standard is consistent with *Garrity*'s recognition that "[s]ubtle pressures may be as telling as coarse and vulgar ones."  *Garrity v. New Jersey*, 385 U.S. 493, 497 (1967) (citations omitted).

None of the other Second Circuit cases cited in the Government's opposition support its argument for a bright-line approach, but each does reflect an assessment of the totality of the circumstances.  For example, in the summary order in *United States v. Johnson*, No. 97-1231, 1997 WL 792443 (2d. Cir. 1997) (*see* Opp. at 16-17), the panel reviewed the denial of a motion to suppress statements made to law enforcement by examining "all the circumstances surrounding the agents' conduct to ascertain" whether the statement was "freely given."  *Id.* at *2.  The court affirmed the district court decision because—unlike the ample objective evidence already in the present, undeveloped record—the employee in *Johnson* supported his claim with only "his subjective understanding" that his employer's "rules" demanded that he speak to law enforcement, and there was "no indication of out-of-the-ordinary conduct on the part of the law enforcement officials that amounted to coercion." *Id*. (citation omitted).  The Government's reliance on *United States v. Solomon*, 509 F.2d 863 (2d Cir. 1975) (*see* Opp. at 17, 19-20) is similarly misplaced.  In *Solomon*, the New York Stock Exchange requested the interview of an officer of a brokerage firm,

---

[4] The district court had found that Roberts simply lied in claiming that the government expressly threatened him with termination.  *United States v. Roberts*, No. 07-CR-425, 2009 WL 700188, at *9 (E.D.N.Y. Mar. 13, 2009).  Absent these alleged threats, the district court found that no other circumstances suggested that he would lose his job absent cooperation, because, unlike here, his "employer had nothing to do with his statements or cooperation," and did not even *know* "of his arrest or his cooperation." *Id.*

and the court was dubious that the Exchange (which in any event was a step removed from the

brokerage firm) would impose any penalty for the defendant's failure to interview.  *Id*. at 867

(explaining that "conceivably the Exchange would not impose suspension, at least of long duration,

or expulsion, on a witness who based his refusal to answer on a not implausible, although

erroneous, claim of self-incrimination").  The court thus found *Garrity* inapplicable not because

*Garrity* requires an "explicit threat" of termination, but because the defendant failed to objectively

substantiate that he would face any economic penalty, much less termination.  *Id.* at 872.[5]  The

cases upon which the Government relies do nothing more than consistently reflect application of

*Garrity*'s objective and subjective reasonableness test based on the totality of the circumstances.[6]

## II.    A HEARING IS NECESSARY TO DETERMINE THE EXTENT OF GOVERNMENT OUTSOURCING

The Government's acknowledgement that the Court must assess the *Garrity* issue based on

the totality of the circumstances (*see* Opp. at 31-35) refutes its assertion that the Court should rule

that there was no *Garrity* violation on the current record.  At trial, the *Garrity* hearing addressed

only whether the Government should be permitted to call Mr. Ricciardi as a witness to testify about

Mr. Black's statements.  Despite the Government's attempt to dodge it, the *Garrity* issue now

pending concerns the constitutional implications of the Government's deputizing Deutsche Bank

and its counsel and using it as the advance team to build the case it presented to the grand jury and

---

[5] The Government mischaracterized the holding in *Solomon* in the same manner during the trial, and the Court noted its disagreement at that time.  [Tr. 2334:17-2335:4.]

[6] Notably, the same holds for the other scattered cases cited by the Government.  *Compare, e.g., United States v. Indorato*, 628 F.2d 711, 715 (1st Cir. 1980) (Opp. at 16), *with Trevino*, 215 F. App'x at 321 ("[N]either *Indorato* or *Garrity* rules out the possibility that implied threats could violate a defendant's *Garrity* rights."); *see, e.g., United States v. Ferguson*, No. 06-CR-137, 2007 WL 4240782, at *7 (D. Conn. Nov. 30, 2007) (Opp. at 23) (finding that a letter from the defendant's employer—as the only objective evidence presented to support a fear of termination— did not in fact require the defendant to "choose between asserting his rights and losing his job," and that the "totality of the circumstances" indicated that his statements were not coerced).

at trial.  The Court invited the Government to "offer a great deal of evidence about what it (not Deutsche Bank/Paul Weiss) did to investigate this case between 2010 and 2015," [*see* ECF No. 406 at 1,] but the Government's opposition did not attach even a single declaration.  To the extent the Court does not move directly to the issue of remedy for the Government's violation of Mr. Black's rights, the Court should follow Chief Judge Linares's example and hold a hearing concerning the extent of governmental outsourcing to make a ruling on a full evidentiary record.

### A.  The Current Record Establishes a *Prima Facie* Showing that Mr. Black's Fifth Amendment Rights Were Violated

For the reasons set forth in Mr. Black's opening brief, the current record establishes a *Garrity* violation because Deutsche Bank's and its counsel's compelled interviews of Mr. Black are fairly attributable to a governmental actor.  (*See* Br. at 2-8, 14-18.)  The Government does not dispute that all four of the types of conduct identified in *Gilman* as sufficient to establish state action under *Garrity* are present in this case.  (*Id.* at 14-18.)  The evidence shows that, *inter alia*, (1) the CFTC forced Deutsche Bank to hire outside counsel to conduct an internal investigation under threat of sanction (*see* Br. at 2-3, 16); (2) the CFTC collaborated with the Government and other agencies and took an active role in overseeing outside counsel's handling of the internal investigation from its inception (*see* Br. at 4-5, 16); (3) the CFTC specifically directed Deutsche Bank and its counsel to interview Mr. Black (*see* Br. at 6-7, 16); and (4) Mr. Black's refusal to meet with Deutsche Bank and its counsel was a terminable offense, as the CFTC and the Government well knew (*see* Br. at 7-8, 17).[7]

---

[7] The Government suggests that it cannot find support for the notion that a civil agency's actions can serve as the basis to bar the introduction of compelled statements under the Fifth Amendment. (Opp. at 24 n.7.)  The Government need not have looked any further than the Second Circuit's decision in *United States v. Allen*, 864 F.3d 63 (2d Cir. 2017), in which the Second Circuit barred these same prosecutors from using the statements compelled by a civil agency (the FCA), and a

The record also establishes that Mr. Black's belief that he would be terminated if he refused to participate in the interviews was both subjectively held and objectively reasonable.  In addition to Mr. Black's affidavit and Deutsche Bank's written policy (*see* Br. at 7-8),[8] the Government's own witness, Mr. Ricciardi, confirmed the common-sense notion that "[t]he choice" faced by Mr. Black and other Deutsche Bank employees asked to sit for an interview with company counsel "is to cooperate or find new employment, basically."  [Tr. 1527:8-15 (Ricciardi).]  Mr. Ricciardi further testified that, because the employee cooperation requirement is standard operating procedure at public companies like Deutsche Bank, he believed that the Government understood that "public company employees, bank employees are required to cooperation [sic]."  [Tr. 1522:4-22.]  Indeed, contrary to its assertion that Mr. Black's belief was not reasonable, the Government acknowledges that "Mr. Ricciardi testified that virtually all public companies, like Deutsche Bank, require employees to cooperate with regulatory and criminal investigations," and the Government further embraces the common-sense principle that, under parallel circumstances, "one is hard pressed to identify a publicly traded company who would continue the employment of an officer who asserted the Fifth Amendment right during an SEC deposition."  (Opp. at 54.)

Moreover, the Government apparently agrees that this Court should assess the totality of the circumstances of Mr. Black's interactions with Deutsche Bank and its counsel in determining

---

foreign one at that.  In fact, the Supreme Court has applied *Garrity* in multiple instances to individuals and entities who are threatened with termination based on the rules or actions of a civil agency.  *See, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 70-84 (1973) (finding unconstitutional general municipal laws disqualifying contractors from contracting with the state if they refuse to waive immunity when called to testify).

[8] The Government falsely claims that Mr. Black "misstates the policy in his motion."  (Opp. at 10 n.1.)  Not only is the Government's distinction between examinations and investigations futile, but more importantly, the Government is misleadingly citing to Mr. Black's motion *in limine* at ECF No. 232 at 7, as opposed to his present *Kastigar* motion at ECF No. 395 at 7, which contains the precise quote that the Government accuses Mr. Black of misstating.

the reasonableness of his belief.  (Opp. 31-35.)  This further bolsters the need for an expanded *Garrity* hearing.  While Mr. Ricciardi testified as to his interactions with Mr. Black, he was not present for multiple interactions between Deutsche Bank, Paul Weiss, and Mr. Black—including the first compelled interview of Mr. Black that, as per the CFTC's direction, occurred before Thanksgiving 2010.  [*See* Tr. 1486:6-17 (Ricciardi).]  This fact alone undercuts the Government's baseless assertion that the "facts . . . surround[ing] Gavin Black's interview with Paul Weiss and the CFTC or DOJ's involvement" in pressuring that interview "have already been developed." (Opp. at 59.)

Nor does the record contain evidence of all the interactions that the other members of the Prosecution Team had with Deutsche Bank and its counsel leading up to Mr. Black's interviews. Indeed, the Government—which controls this evidence—has not even provided Mr. Black with full discovery relating to this issue.  The Government's unsupported suggestion that Mr. Black had every opportunity "to supplement the record to provide every piece of fact and legal argument to be made on this issue" is thus simply not accurate.  (*Id*.)

Accordingly, while the current record shows that, as a result of Government conduct, Mr. Black believed that he had "no real choice but to speak" with the bank's lawyers if he wished to keep his job, and that "a reasonable person in that position would have felt the same way," *Stein I*, 440 F. Supp. 2d at 328, an expanded hearing after discovery is required for the Court to make these assessments under the totality of the circumstances.

B.     **An Evidentiary Hearing Is Required to Determine the Exact Relationship Between the Government and Deutsche Bank and the Extent of Government Outsourcing**

The Court should hold an expanded *Garrity* hearing before making any determination that the Government is not responsible for Deutsche Bank's compelled interviews of Mr. Black, or that Mr. Black's statements were not involuntary, under the totality of the circumstances.  *See, e.g., id*.

at 330 (finding a fulsome *Garrity* hearing appropriate where defendants established "more than sufficient evidence to raise an issue of fact" on government action and involuntariness of statements).  The need for a full hearing is bolstered by the Government's attempt to argue the facts in its opposition papers, including making unsworn factual representations concerning, *inter alia*, the CFTC's motivation in directing Deutsche Bank's conduct (*see* Opp. at 3-5), the Government's and the CFTC's investigatory efforts outside of Deutsche Bank's cooperation (*see id.* at 7-9), and the lack of coercive action (*see* Opp. at 12-13, 29-30).

Moreover, the Court should not credit any of the Government's unsupported and unsworn representations as to the factual record given its pattern of misrepresentations and inconsistencies to date, including those relating to its relationships with other members of the Prosecution Team. (*See, e.g.*, Br. at 10-12; ECF No. 398 at 26-37.)  For example, in opposing Mr. Black's motion for *Kastigar* relief, the Government argues that its outside investigative efforts into Deutsche Bank are supported by the fact that it conducted joint interviews with other Prosecution Team members "in other LIBOR investigations."  (Opp. at 7 (referencing interviews of Barclays and Rabobank employees and others that the Government conducted with the FCA, SEC, CFTC, and others before the second compelled interview of Mr. Black).)  But the Government's opposition to Defendants' motion to dismiss for prosecutorial misconduct filed the same day contradicts this representation in defending its prior false statements to the Court regarding same number of joint interviews.  [ECF No. 411 at 29 ("The government stands by those statements and, in addition, maintains that the number of interviews conducted along with other agencies *in relation to Deutsche Bank* is the correct metric for the question of whether there was a joint Deutsche Bank investigation.") (emphasis added).]

A hearing is particularly necessary because the Government has apparently decided that, notwithstanding its acknowledgment of the Court's contrary guidance, it "will not seek to supplement the record" on the issue of whether "the DOJ or CFTC 'outsourced their investigations.'"  (Opp. at 57.)  But, for the reasons detailed herein, and those already noticed by the Court [*see, e.g.*, Tr. at 2315-2318], further discovery and a hearing is necessary to determine the extent of the Government's outsourcing of its investigation to Paul Weiss before any determination can be made that Mr. Black's Fifth Amendment rights were not violated.  As shown above, the coercive inducement of Deutsche Bank and its counsel to serve as a government functionary under threat of indictment or other sanction clearly provides the requisite nexus to meet *Garrity's* state action requirement.  *See, e.g.*, *Stein II*, 541 F.3d at 146-47 (stating that government responsibility for a private entity's conduct "is normally found when the State 'has exercised coercive power or provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" (quoting *Blum*, 457 U.S. at 1004)).[9]

Moreover, this Court should reject the Government's attempts to sidestep a hearing here because "the issue in *Blumberg* . . . was not a *Garrity* question."  (Opp. at 57-58.)  The issue at focus in the *Blumberg* hearing, as discussed further below, was the determination of "the exact relationship between the Government and [the cooperating company] . . . and . . . the extent to which the Government outsourced and/or delegated discovery and investigation tasks."  (Levine Decl. Ex. A at 1-2.)  For the reasons already discussed, this precise issue is squarely relevant to

---

[9] The Government would also bear responsibility for Mr. Black's compelled interviews under the expansive "but-for" test that it suggests in its brief.  (*See* Opp. 38-39.)  Mr. Ricciardi testified that Deutsche Bank's investigation was not self-initiated and that its hiring of outside counsel, including Paul Weiss and Slaughter & May, to conduct an internal investigation that led to the interviews of Mr. Black, did not occur but for Deutsche Bank's interactions with the CFTC.  [*See, e.g.*, Tr. 1484:19-1485:6 (Ricciardi).]

the *Garrity* inquiry.  In any event, the *Stein* Court determined that similar discovery and hearings were appropriate in the context of the specific *Garrity* issue, with one hearing focused on "whether the government . . . affected KPMG's determination(s)" to coerce its employees to agree to proffers, *United States v. Stein*, 435 F. Supp. 2d 330, 352 (S.D.N.Y. 2006), and another focused on "the pressure placed upon [the employees] by KPMG," *Stein I*, 440 F. Supp. 2d at 330.

Nor do any of the Government's cases support its assertion that it cannot be held responsible for Deutsche Bank and its counsel's interactions with Mr. Black because of its later investigative work, including subsequent proffers of Mr. Black.  Indeed, the Government itself touted the benefits it received from outsourcing portions of its investigation to Deutsche Bank and its counsel in the Deferred Prosecution Agreement:

> Although Deutsche Bank did not self-disclose this misconduct, upon being alerted to an investigation by the Department and other regulatory authorities, Deutsche Bank commenced an internal investigation and cooperated with authorities, including *disclosing much of the misconduct described in the Information and Statement of Facts*.  Deutsche Bank collected, analyzed, and organized voluminous evidence, data, and information, and did so in a way that *saved the Department significant resources* by identifying certain documents and segments of audio files and providing translations for certain documents where applicable.  *Deutsche Bank also assisted and facilitated the Department's interviews of current and former employees*, including foreign employees and Deutsche Bank communicated with and updated the Department with increasing frequency as the investigation progressed.

[GX-1-715 ¶ 4a (emphasis added) (admitted at *Garrity* hearing).]  Accordingly, an evidentiary hearing, following discovery, is necessary to determine the extent of Government outsourcing and the resulting coercion imposed upon Mr. Black.

### C.  The Hearing in *Blumberg* Provides the Blueprint that the Court Should Consider for the Hearing and Discovery Required in this Case

In conducting a hearing, the Court should consider the blueprint established by Chief Judge Linares in *Blumberg*.  In that case, the defendant moved to compel the Government to search the files of its corporate cooperator for *Brady* material pursuant to *United States v. Risha*, 445 F.3d

298 (3d Cir. 2006), because the cooperating entity was a member of the prosecution team based on governmental outsourcing. *See id.* at 304 (stating that the Government has constructive possession over materials in another entity's files where (1) the entity is "acting on the government's 'behalf' or is under its 'control'"; (2) the entity and the Government "are part of a 'team,' are participating in a 'joint investigation' or are sharing resources"; and (3) the Government "has 'ready access' to the evidence" at issue). Chief Judge Linares granted the defendant's request for an evidentiary hearing on this motion, following discovery, to determine "the exact relationship between the Government and [the cooperating company] in the context of the instant prosecution and also the extent to which the Government outsourced and/or delegated discovery and investigation tasks to [the cooperating company]." (Levine Decl. Ex. A at 1-2.) Chief Judge Linares also granted the defendant's motion to compel the Government to produce, *inter alia*, all materials related to the cooperation between it and the corporate cooperator. (Levine Decl. Ex. B (Filing 125 (8/1/16 Order)) at 5.) Notably, the court's discovery order extended to the Government's investigative partner in that case, the SEC. (*Id.*) The Government ultimately produced thousands of emails documenting communications between it, the SEC, and the cooperating company, as well as attorney notes of hundreds of telephonic or in person meetings that it and/or the SEC had with company counsel, which were made part of the record at the evidentiary hearing. The Government also produced an index of the attorney notes identifying the date, custodian (*i.e.*, notetaker), and participants. In addition, the defendant received discovery from the cooperating company that was made part of the record.

At the *Blumberg* hearing, the Government called three witnesses: two outside attorneys for the company who participated in the company's internal investigation under the Government's direction and Special Agent Michael McGillicuddy (who coincidently worked on both *Blumberg*

and this case).  The defendant called two additional witnesses:  another outside attorney who participated in the company's internal investigation, and one of the prosecutors.   Additional witnesses were noticed for testimony but not called.  Chief Judge Linares reserved decision on the defendant's motion subject to post-hearing briefing to be followed by summations and oral argument.   The parties ultimately resolved the case prior to the filing of post-hearing briefing, which mooted the issues raised at the hearing.  As a result, Chief Judge Linares did not rule on the constitutional issues.

Mr. Black respectfully submits that the Court should follow the precedent established in *Blumberg* for the evidentiary hearing and order the Government to produce all materials related to Deutsche Bank's and others' cooperation in the LIBOR investigation, including, but not limited to, (1) all email communications between and among the Prosecution Team; and (2) all attorney and agent notes of meetings and telephones calls between and among the Prosecution Team, along with an index identifying the date, custodian and participants.  The relevant time period for such production should include January 2010 through December 2015.[10]

---

[10] Mr. Black notes that a subset of these materials covering a portion of the relevant period was already produced in connection with the *Kastigar* hearing.  Mr. Black also reserves the right to request discovery of additional hearing-related materials.

## **CONCLUSION**

For the foregoing reasons, to the extent the Court does not dismiss this case, the Court

should hold a hearing and grant such further relief that it deems just and proper.

Dated: New York, New York
       February 13, 2019

                                        Respectfully Submitted:
                                        By:  /s/ Seth L. Levine
                                            Seth L. Levine
                                            Scott B. Klugman
                                            Miriam L. Alinikoff

                                        **LEVINE LEE LLP**
                                        650 Fifth Avenue, 13th Floor
                                        New York, New York 10019
                                        Telephone:  (212) 223-4400
                                        Facsimile:  (212) 223-4425
                                        slevine@levinelee.com
                                        sklugman@levinelee.com
                                        malinikoff@levinelee.com

                                        *Attorneys for Defendant Gavin Campbell Black*